50 A.3d 15

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
CARLTON HARRIS, DEFENDANT–RESPONDENT.

Argued January 4, 2012—Decided August 16, 2012.

568

*Frank Muroski,* Deputy Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*John S. Furlong* argued the cause for respondent (*Furlong and Krasny,* attorneys).

*Michael J. Sullivan* and *Mark K. Silver* submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (*Coughlin Duffy,* attorneys).

*Alexander R. Shalom* submitted a brief on behalf of amicus curiae American Civil Liberties Union of New Jersey Foundation (*Edward L. Barocas,* Legal Director, attorney; *Mr. Shalom, Mr. Barocas* and *Jeanne M. LoCicero,* on the briefs).

Judge WEFING (temporarily assigned) delivered the opinion of the Court.

In this appeal, we are called upon to consider the relationship between a search conducted pursuant to a warrant issued under

*N.J.S.A.* 2C:25–28(j), which permits issuance of a warrant upon reasonable cause, and Article I, paragraph 7 of the New Jersey Constitution and the Fourth Amendment of the United States Constitution, both of which state that no warrant may issue "except upon probable cause." Specifically, we must decide whether weapons recovered from a defendant's premises during a search conducted pursuant to a warrant issued under *N.J.S.A.* 2C:25–28(j) may be admitted in a subsequent criminal prosecution of defendant for possession of those weapons. The trial court decided that such weapons may not be so admitted and granted defendant's motion to suppress. The Appellate Division affirmed that result in part and remanded in part for further proceedings. Although we concur with the Appellate Division that further proceedings are required in one respect, we are satisfied that it was error to grant defendant the relief of suppression.

I.

The question arises in the following context. After the discovery of a number of weapons during a search of defendant's residence pursuant to a search warrant issued under the Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25–17 to –35, defendant was indicted for possession of an assault firearm, *N.J.S.A.* 2C:39–5(f), a crime of the second degree; possession of a loaded rifle, *N.J.S.A.* 2C:39–5(c)(2), a crime of the third degree; five counts of possession of a large capacity ammunition magazine, *N.J.S.A.* 2C:39–3(j), a crime of the fourth degree; unlawful possession of a firearm, a stolen revolver, *N.J.S.A.* 2C:39–5(b), a crime of the second degree; receiving stolen property, *N.J.S.A.* 2C:20–7(a), a crime of the third degree; and three counts of certain persons not to possess a firearm, *N.J.S.A.* 2C:39–7(b)(3), a crime of the third degree. In his subsequent criminal prosecution, defendant challenged the admissibility of the weapons recovered in this search because the warrant was issued under *N.J.S.A.* 2C:25–28(j), which authorizes the issuance of a warrant for the search and seizure of weapons "at any location where the judge has reasonable cause to

believe the weapon is located." The trial court granted defendant's motion to suppress, a result the Appellate Division in an unpublished opinion affirmed in part and remanded in part. Thereafter, we granted the State's motion for leave to appeal. *State v. Harris*, 206 *N.J.* 327, 20 *A.*3d 434 (2011). We granted as well the motions of the American Civil Liberties Union of New Jersey and Association of Criminal Defense Lawyers of New Jersey to appear as amici curiae.

## II.

Our understanding of the factual complex rests largely on the pleadings and briefs that were filed, together with the several written opinions. Defendant's motion to suppress was decided on the basis of the parties' briefs and oral argument, as the parties agreed to dispense with the presentation of any testimony. As a result, the record is sparse, and we do not have any credibility assessments by the trial court that decided defendant's suppression motion. Decisions with respect to motions to suppress are uniquely fact-sensitive, and it is not always evident from the outset which facts will ultimately prove to be critical to the analysis. While we recognize that there are indeed instances in which a trial court can analyze and decide a motion to suppress without the benefit of live testimony, those instances are the exception. A trial court need not accept the assurances of the parties that testimony is unnecessary; rather, it remains free to pose its own questions that may arise with respect to the scenario the parties have agreed to present to the court.

With that caveat, we set forth the following factual background that led to defendant's motion to suppress. On August 12, 2009, W.J. sought a temporary restraining order against defendant. In her certified complaint, W.J. stated she and defendant had had a dating relationship. The complaint contains the following factual recitation, evidently typed by court staff on the basis of W.J.'s oral statements to them.

> DEF BEAT PLA UP. PLA WAS ABLE TO GET AWAY. PLA CAME BACK TO HER HOME & DEF BEGAN TO BEAT PLA UP DEF PUNCHED IN PLA FACE REPEATEDLY, SPIT IN PLA FACE & CALLED PLA NAMES. DEF LEFT BUT RETURNED AGAIN WITH A GUN & THREATENED TO KILL PLA & HER ... FAMILY. DEF IS ON DRUGS AND IS DRINKING. PLA WENT TO THE POLICE STATION. WHILE PLA WAS OUT, DEF KICKED PLA DOOR IN. PLA CHILDREN CALLED THE POLICE. DEF LEFT BEFORE THE POLICE ARRIVED. DEF RETURNED A FINAL TIME AND KICKED IN THE DOOR AGAIN DOING SIGNIFICANT DAMAGE TO THE FRAME AND LOCK; ALSO DAMAGED OTHER DOORS IN HOME.

W.J. also alleged in the complaint that defendant had been stalking her on a daily basis, following her, calling her, and driving past her home. She noted that defendant had been arrested three months earlier for assaulting her and that those charges remained pending.

Following W.J.'s appearance, the trial court completed that portion of the standard domestic violence order that authorized the officers serving the restraining order to conduct a search for weapons.[1] It noted the weapons in question included, but were not limited to, two 9 mm firearms, one .45 caliber or .38 caliber firearm, and an automatic rifle with an ammunition belt. The order listed the address to be searched and encompassed both the basement and the garage of the premises. Attached to the domestic violence restraining order was another order, signed by the trial court, which contained the following handwritten special conditions.

> This is a NO KNOCK WARRANT! There are two pit bulls and possible booby traps. Officers are also permitted to search '95 Dodge 4 × 4 pick-up, black with cap, as long as it is parked in driveway or in front of house. Officers should search couch on porch, behind the bar in the basement, contents of any safe, including one in basement by back door.

---

[1] Although we have received a copy of the transcript of W.J.'s appearance, that transcript was not supplied to the court in conjunction with defendant's suppression motion, nor was it supplied to the Appellate Division. We thus omit any reference to those proceedings in our opinion and confine our analysis to those items before the court at the time it decided defendant's motion to suppress. Because we have disregarded this transcript, defendant's subsequent motion to remand this matter for an evidentiary hearing to test the accuracy of W.J.'s testimony is dismissed as moot.

The temporary restraining order and search warrant were served on defendant at approximately 6:45 p.m. that evening. The trial court that considered and ultimately granted defendant's subsequent motion to suppress described the evening's events in the following manner in its written opinion:

The Defendant was immediately identified upon officers' arrival at the residence. He was placed under arrest and detained in the police vehicle while the officers conducted the search. Officers recovered, in the third floor attic, a Cetme .308 caliber assault rifle and five twenty-round large capacity magazines. Additionally, a Colt Anaconda .45 revolver was found inside a safe, using a combination provided by the Defendant. Lastly, with the assistance of an evidence-sniffing dog, a Ruger P89 handgun, two spent casings and one live round were found. The Ruger P89 was recovered on top of a china cabinet. The two spent casings and the live round were found under the floorboards of the third floor attic.

The three recovered weapons were run through the N.J. State Police database on August 13, 2009. The database search revealed that the Colt Anaconda was reported stolen.

The discovery of these items, and the subsequent discovery that one of the weapons had been reported stolen, led to the criminal charges against defendant that we recited at the outset. The second-degree charge of illegal possession of a firearm related to the stolen Colt Anaconda revolver. Defendant was not charged with any crime regarding the Ruger P89, which had also been seized during the search.

### III.

Defendant moved to suppress the items recovered in this search. Because the items had been found as a result of a search conducted pursuant to a warrant issued under the domestic violence statute, he contended that they could not be introduced into evidence in a subsequent criminal proceeding. In support of his position, defendant relied principally on *State v. Perkins,* 358 *N.J.Super.* 151, 817 *A.*2d 364 (App.Div.2003). The State countered that *Perkins* was distinguishable because in that matter the police acted on a telephone complaint of assault; there was neither a sworn complaint alleging domestic violence nor a search warrant of any sort. The State stressed that, here, W.J. had sworn to the

truth of her allegations, and a judge had found there was "reasonable cause" to search for weapons.

The trial court agreed with defendant, concluding that "the provisions [of the domestic violence statute] allowing search and seizure are only constitutional because they serve a legitimate state interest and therefore evidence gathered during the search cannot have criminal repercussions for the defendant."

The Appellate Division granted the State's motion for leave to appeal from the trial court order granting defendant's motion to suppress. On appeal, the State argued that the weapons were admissible because they were recovered during a judicially-authorized search pursuant to a valid warrant. It also argued that the weapons were admissible because the officers had found them in plain view during the search. Defendant countered these arguments by maintaining that a warrant under the domestic violence statute is civil in nature because it may issue under reasonable cause, rather than probable cause. This lower civil threshold, he concluded, made items recovered during a search inadmissible in subsequent criminal proceedings, which require satisfaction of the probable cause standard. He also argued that the question of whether the items were seized because they were in plain view could not be answered on the record as it then existed but would require a remand for a hearing.

The Appellate Division rejected the State's argument with respect to the nature of the warrant issued in conjunction with the temporary restraining order. It noted that the warrant did not issue upon probable cause, but upon the lesser standard of reasonable cause. It also noted that the purpose of the search had been to provide protection to W.J., rather than to uncover evidence of criminal conduct on defendant's part. Accordingly, the panel agreed with defendant that the two handguns should be suppressed. It noted they were not within the plain view of the searching officers and the fact that the Colt Anaconda was a stolen weapon was not immediately apparent but required further investigation through the database maintained by the State Police.

The panel recognized, however, that the searching officers, as soon as they came upon the assault rifle and the large capacity magazines, may immediately have known that it was illegal for defendant to possess those items. It thus affirmed that portion of the trial court's order that suppressed the two handguns, but it reversed that portion of the trial court order that suppressed the assault rifle and its accompanying magazines and remanded the matter to the trial court for further proceedings. The matter is before this Court because we granted the State's motion for leave to appeal.

## IV.

The State presents several arguments in support of its position that the trial court and the Appellate Division erred in granting, in any respect, defendant's motion to suppress. The State stresses that all of the weapons in question were recovered while the police were conducting a search that had been judicially authorized by a search warrant issued under *N.J.S.A.* 2C:25–28(j). It argues that, as a consequence, the recovered weapons are admissible in a subsequent criminal prosecution against defendant because the warrant and the search conducted pursuant to that warrant complied with the special needs doctrine recognized under the Fourth Amendment to the United States Constitution and the New Jersey Constitution.

The State also asserts that despite the reference in *N.J.S.A.* 2C:25–28(j) to issuing a warrant upon "reasonable cause," the trial court must have found probable cause to issue the warrant because a predicate to the issuance of a temporary restraining order is a finding of probable cause that a defendant has committed an act of domestic violence. It contends in the alternative that a court considering an application for a temporary restraining order may issue a valid search warrant on less than probable cause. An insistence on probable cause in the context of an application for a temporary restraining order under the domestic violence statute

would, in the view of the State, create an unjustifiable risk that the weapons of domestic abusers would remain unsecured.

Additionally, the State distinguishes *Perkins, supra,* because in that matter the police conducted the search without having obtained a warrant of any form. It urges this Court not to extend *Perkins* to cases in which a valid warrant under the domestic violence statute was obtained prior to the search. It contends that suppression of these weapons would not further any of the purposes that are served by the exclusionary rule.

Defendant, on the other hand, stresses that a search warrant may issue on less than probable cause under the domestic violence statute; this, says defendant, requires that any items seized while executing such a search warrant be held inadmissible in a subsequent criminal proceeding. He notes that there is no requirement under the domestic violence statute of any nexus between a weapon seized pursuant to a domestic violence search warrant and the conduct alleged to constitute an act of domestic violence.

Defendant disputes the State's assertion that the requirement that there must be probable cause to believe an act of domestic violence occurred before a trial court may enter a temporary restraining order necessitates the conclusion that the trial court made a similar conclusion of probable cause with respect to the presence of weapons. He contends that the State's argument conflates separate portions of the domestic violence statute.

Defendant urges us to apply the analysis used in *Perkins, supra,* and affirm the trial court's suppression order. He stresses that the warrant procedure contained in the domestic violence statute envisions a special needs warrant, that is, a warrant issued with the purpose of protecting an applicant from the risk of violence at the hand of an abuser. In defendant's view, to use the results of a search conducted pursuant to such a warrant in a criminal proceeding would exceed the special need for which the warrant was issued in the first place.

Amicus American Civil Liberties Union of New Jersey echoes defendant's arguments. It also asserts that, contrary to the position of the State, a warrant issued under the domestic violence statute cannot be considered to be a warrant issued on the basis of probable cause. It stresses that the statute permits a warrant to issue to search a home for weapons on the basis of reasonable cause because of the need to protect a victim of domestic violence from the heightened risk of harm posed by the presence of a weapon. It contends that to permit a weapon seized pursuant to such a warrant to be used in a criminal prosecution would exceed the purpose of the search and is, accordingly, impermissible.

Amicus Association of Criminal Defense Lawyers of New Jersey argues that neither the legislative history nor the language of the domestic violence statute supports a subsequent criminal prosecution for offenses unrelated to domestic violence on the basis of items seized during a domestic violence search. It also posits that permitting a subsequent criminal prosecution of an alleged abuser on the basis of items seized during a domestic violence search may shift the focus of officers involved in a domestic violence situation from affording full protection to the alleged victim to marshalling a criminal prosecution against the alleged abuser.

## V.

We note at the outset the standard that governs our review of these various contentions.

> An appellate court should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy. An appellate court should not disturb the trial court's findings merely because it might have reached a different conclusion were it the trial tribunal or because the trial court decided all evidence or inference conflicts in favor of one side in a close case. A trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.
>
> [*State v. Elders*, 192 *N.J.* 224, 244, 927 *A.*2d 1250 (2007) (internal quotations omitted).]

When, on the other hand, an appellate court is considering the legal conclusions and analysis of the trial court, its review is

plenary. *State v. Handy,* 206 *N.J.* 39, 45, 18 *A.*3d 179 (2011) (citing *Manalapan Realty v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995)). Here, of course, the findings of the trial court in connection with the suppression matter were not "substantially influenced" by hearing and seeing witnesses because no witness testified.

## VI.

New Jersey enacted the Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25–17 to –35, in 1991 to protect individuals who suffered abuse from their spouses, family members, or cohabitants. In 1994, the statute was amended to extend its protections to individuals such as W.J. who had had a dating relationship with the alleged abuser or had had a child in common with the alleged abuser. *N.J.S.A.* 2C:25–19(d).

The Legislature included in the statute an explicit declaration of its findings and its purpose in enacting the statute. It declared domestic violence to be "a serious crime against society" and stated its intent "to assure the victims of domestic violence the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18. To confront the problem of domestic violence, the Legislature provided a panoply of remedies, *N.J.S.A.* 2C:25–28, –29, and encouraged their "broad application." *N.J.S.A.* 2C:25–18. We noted in *Cesare v. Cesare,* 154 *N.J.* 394, 399, 713 *A.*2d 390 (1998), that "the law was meant to 'ensure[ ] that spouses who were subjected to criminal conduct by their mates had full access to the protections of the legal system.'" (quoting *Corrente v. Corrente,* 281 *N.J.Super.* 243, 248, 657 *A.*2d 440 (App.Div.1995)).

Because the presence of weapons can heighten the risk of harm in an incident of domestic violence, the statute contains detailed provisions with respect to weapons. An officer responding to a scene of domestic violence has "authority to seize any weapon that is contraband, evidence or an instrumentality of crime," *N.J.S.A.* 2C:25–21(d)(1), and that officer must inquire whether there are weapons on the premises, *N.J.S.A.* 2C:25–21(d)(1)(a). If an officer

learns that weapons are present, the statute directs that any weapon the officer "reasonably believes would expose the victim to a risk of serious bodily injury" shall be seized, together with any firearm purchaser identification card or permit. *N.J.S.A.* 2C:25–21(d)(1)(b). The weapons are to be turned over to the county prosecutor, who, within forty-five days, may seek their forfeiture or return them to their owner. *N.J.S.A.* 2C:25–21(d)(2)–(3).

Another portion of the statute deals with the issue of weapons when a plaintiff files a complaint, seeking the protection of a temporary restraining order and alerting the court that the alleged abuser may have weapons. In that situation, the trial court may order "the search for and seizure of any such weapon at any location [it] has reasonable cause to believe the weapon is located." *N.J.S.A.* 2C:25–28(j). In this matter, the search for and seizure of defendant's weapons was conducted under this portion of the statute, *N.J.S.A.* 2C:25–28(j), and not *N.J.S.A.* 2C:25–21(d).

Defendant does not challenge the initial seizure of the weapons. Nor does he seek their return. Indeed, his attorney noted at the argument on his motion to suppress that defendant had conceded to forfeiture of the weapons. His argument, rather, is that items seized during the conduct of a domestic violence search cannot serve as the basis for a subsequent criminal prosecution for possession of those items. As we view the matter, resolution of defendant's challenge turns on whether the illegal nature of the weapons was immediately apparent. That, in turn, depends on whether the police, in checking the serial numbers of the weapons, conducted a further search, beyond that authorized by the domestic violence search warrant.

### A.

Certain fundamental principles guide our consideration of these issues. Both the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution recognize the peoples' right "to be secure in their persons, houses, papers, and effects" and require that any warrant autho-

rizing a search be "supported by oath or affirmation" and describe with particularity the area that may be searched and what may be seized. Despite the similarity in language of the two documents, this Court has recognized that our own State Constitution "afford[s] [our] citizens greater protections than those afforded by its federal counterpart." *State v. Minitee*, 210 *N.J.* 307, 44 *A.*3d 1100 (2012) (quoting *State v. Cooke*, 163 *N.J.* 657, 666, 751 *A.*2d 92 (2000)).

 A chief goal of both the federal constitution and our state constitution is to protect individuals against unreasonable intrusions into the home. *State v. Cassidy*, 179 *N.J.* 150, 159–60, 843 *A.*2d 1132 (2004). We recognized this principle in *State v. Frankel*, 179 *N.J.* 586, 597–98, 847 *A.*2d 561, *cert. denied*, 543 *U.S.* 876, 125 *S.Ct.* 108, 160 *L.Ed.*2d 128 (2004), when we stated that "our constitutional jurisprudence expresses a preference that ... warrants issued by neutral and detached magistrates [be obtained] before executing a search, particularly of a home." A warrantless search of an individual's home is " 'presumptively unreasonable,' " *State v. Hutchins*, 116 *N.J.* 457, 463, 561 *A.*2d 1142 (1989) (quoting *Payton v. New York*, 445 *U.S.* 573, 586, 100 *S.Ct.* 1371, 1380, 63 *L.Ed.*2d 639, 651 (1980)), and " 'must be subjected to particularly careful scrutiny.' " *Cassidy*, *supra*, 179 *N.J.* at 160, 843 *A.*2d 1132 (quoting *State v. Bolte*, 115 *N.J.* 579, 583, 560 *A.*2d 644 (1989)).

 This Court has developed several exceptions to the general rule that a warrant based on probable cause must be issued prior to any search or seizure. Among these exceptions are items that are in plain view, *State v. Bruzzese*, 94 *N.J.* 210, 235–36, 463 *A.*2d 320 (1983), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984), and searches or seizures that occur while the police are in the process of rendering emergency aid, *State v. O'Donnell*, 203 *N.J.* 160, 1 *A.*3d 604, *cert. denied*, —— *U.S.* ——, 131 *S.Ct.* 803, 178 *L.Ed.*2d 537 (2010), or while performing a community caretaking function, *State v. Bogan*, 200 *N.J.* 61, 975 *A.*2d 377 (2009).

■ Pertinent to this matter is the special needs exception, which is applicable when the search is conducted for reasons unrelated to law enforcement's investigation and prosecution of criminal activity and furthers an important state interest. This Court has applied the special needs exception to the probable cause requirement in a variety of contexts. *State v. O'Hagen*, 189 *N.J.* 140, 914 *A.*2d 267 (2007) (applying special needs analysis to uphold statute requiring all those convicted of certain offenses to provide blood sample for DNA testing); *Joye v. Hunterdon Cent. High Sch.*, 176 *N.J.* 568, 826 *A.*2d 624 (2003) (special need justified random suspicionless drug testing of students engaged in extra-curricular activities or seeking special privileges); *N.J. Transit PBA Local 304 v. N.J. Transit Corp.*, 151 *N.J.* 531, 701 *A.*2d 1243 (1997) (special need justified random drug and alcohol testing of employees in safety-sensitive positions); *State in Interest of J.G.*, 151 *N.J.* 565, 701 *A.*2d 1260 (1997) (upholding requirement that sex offender must submit to testing for HIV and/or AIDS).

B.

Both the trial court and the Appellate Division viewed this matter solely through the lens of the special needs exception. In addition, neither fully recognized that *State v. Perkins, supra,* the principal authority each court relied upon, arose under *N.J.S.A.* 2C:25–21(d), rather than *N.J.S.A.* 2C:25–28(j).

In *Perkins,* the defendant's wife called 9-1-1 and told the operator that her husband had struck her in the head with a telephone. 358 *N.J.Super.* at 154, 817 *A.*2d 364. She also told the operator that her husband had a gun collection and had been drinking. *Ibid.* Four police officers were dispatched to the scene, and the defendant admitted striking his wife. *Id.* at 154–55, 817 *A.*2d 364. They found and removed more than eighty firearms, as well as a number of knives and swords. *Id.* at 155, 817 *A.*2d 364. One of the weapons seized was a .30 caliber M–1 Carbine, which is classified as an "assault firearm" under *N.J.S.A.* 2C:39–1(w)(1). *Id.* at 156, 817 *A.*2d 364. The defendant was indicted for unlawful

possession of an assault weapon pursuant to *N.J.S.A.* 2C:39–5(f). *Id.* at 154, 817 *A.*2d 364. The trial court granted the defendant's motion to suppress, and the Appellate Division affirmed. *Id.*

In its opinion, the Appellate Division recognized that the officers had conducted the search without obtaining any warrant. It traced the development of the special needs exception and noted that searches conducted under that exception "are permissible because they promote an important State interest and do not place the offender at additional risk because the results are not intended to facilitate a criminal prosecution." *Id.* at 159, 817 *A.*2d 364.

Although the panel concluded that the officers had acted reasonably in the manner in which they had conducted their search and in seizing the weapons, it cautioned that the warrantless search "pass[ed] constitutional muster so long as the results are not used to facilitate a criminal prosecution." *Id.* at 161, 817 *A.*2d 364. Within its opinion, however, the panel noted an important limitation.

[A]bsent, for example, a threat to use a weapon or suspicion that a particular weapon is itself illegal or illegally possessed, the search and resulting seizure, like any special needs search, is not based upon suspicion that a crime has been committed, but instead countenanced by a State interest, civil in nature, to protect potential victims....

[*Ibid.*]

*Perkins* is thus distinguishable from the instant matter in at least three important respects. Here, the search was conducted only after W.J. gave sworn testimony that resulted in the issuance of a domestic violence warrant. Further, that testimony not only included statements with respect to defendant's assaults upon her, but it also included the statement that defendant had, in fact, threatened to shoot her. Additionally, *Perkins* was decided before this Court decided *Joye, supra,* in which we upheld as constitutional random, suspicionless testing of high school students for drugs and alcohol, and *O'Hagen, supra,* in which we upheld, in the face of a constitutional challenge, the requirement that those charged or convicted of certain specified offenses supply a DNA exemplar. It cannot escape mention, moreover, that in *O'Hagen*

we recognized specifically that the DNA sample could expose the donor to further criminal prosecutions, 189 *N.J.* at 159, 914 *A.*2d 267, thus clarifying that this Court did not subscribe entirely to the statement in *Perkins* that the validity of special needs searches rests on the results not being used "to facilitate a criminal prosecution." 358 *N.J.Super.* at 159, 817 *A.*2d 364.

In *State v. Dispoto*, 189 *N.J.* 108, 913 *A.*2d 791 (2007), this Court addressed the significance of a domestic violence search warrant with respect to a subsequent criminal prosecution. In that case, the Manhattan District Attorney's Office referred to the New Jersey State Police an informant who allegedly possessed information with respect to criminal activities by the defendant. 189 *N.J.* at 113, 913 *A.*2d 791. The trooper who received the referral had no prior dealings with the informant and no information with respect to whether he had proven credible in his dealings with the New York office. *Id.* The informant told the trooper about certain criminal activities in which he said the defendant was engaged and also told the trooper that the defendant had asked him whether he knew anyone who would kill the defendant's wife for him. *Ibid.* The trooper did not attempt to corroborate any of the information supplied by the informant but asked him to set up a meeting with the defendant, at which the informant would be equipped with a recording device. *Id.* at 114, 913 *A.*2d 791. At that meeting, the defendant said he was not interested in arranging to have his wife killed, in part at least, because he recognized he would come under suspicion. *Ibid.* However, the tape in the recording device was filled before that portion of the conversation occurred. *Ibid.* Thus, there was no proof beyond the informant's statement of the defendant either seeking to hire someone to kill his wife or renouncing any such purpose. *Ibid.* The trooper consulted with his superior, and it was decided there was an insufficient basis to investigate the defendant on a murder-for-hire theory but that the defendant's wife should be alerted that she might be in danger. *Ibid.*

Several troopers then met with the defendant's estranged wife and told her they had learned that the defendant had tried to arrange to hire someone to kill her; they did not tell her that he had subsequently renounced such an idea. *Id.* at 115, 913 *A.*2d 791. They also urged her to seek a temporary restraining order against him and assisted her in the process. *Ibid.* When the municipal court judge asked whether a domestic violence search warrant for weapons was sought, the trooper said he had to consult with the county prosecutor. *Ibid.* The trooper contacted the municipal court judge later that evening to request such a warrant, recounted what the informant had told him, and requested a warrant to search for and seize any weapons the defendant might have. *Id.* at 116, 913 *A.*2d 791. The trooper did not tell the municipal court judge that he had no information regarding the reliability of the informant or the information the informant had given him. *Ibid.* The judge issued the domestic violence search warrant, which was executed that evening. *Ibid.* The defendant turned over to the officers the unregistered handgun he had. *Ibid.* The defendant, after some initial resistance, let the police enter the locked garage, in which they observed a locked safe. *Id.* at 116–17, 913 *A.*2d 791. The officers later testified they could detect a strong odor of marijuana coming from the safe and asked the defendant what the safe contained. *Id.* at 117, 913 *A.*2d 791. He said it held two pounds of marijuana. *Id.* Based on that statement, the defendant was placed under arrest and the scene secured. *Ibid.* The next day, the police prepared an affidavit setting forth what had occurred and obtained a criminal search warrant. *Ibid.* Acting pursuant to that search warrant, the police returned, opened the safe, and retrieved the drugs. *Ibid.* The defendant was later indicted on drug-related charges; he was not charged separately with respect to the handgun. *Ibid.*

The trial court ultimately granted the defendant's motion to suppress, finding that the defendant's statement that the safe contained marijuana was taken in violation of the defendant's rights under *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), and that the subsequently obtained criminal

search warrant was tainted irremediably. *Id.* at 118, 913 *A.*2d 791. The Appellate Division affirmed. *Id.* at 118–19, 913 *A.*2d 791. This Court analyzed the matter, not from the perspective of whether the defendant's *Miranda* rights had been violated but, rather, with respect to whether the record contained a sufficient factual basis to support a conclusion that probable cause existed to support issuance of a criminal search warrant.

We determined that the record did not support a conclusion of probable cause. We noted the lack of corroboration for the informant's statements, as well as their contradictory nature. *Id.* at 122, 913 *A.*2d 791. We noted that the fact that the defendant's estranged wife became upset when troopers informed her of what they had learned was not a sufficient basis to find that a threat had been "made under circumstances under which it carrie[d] the serious promise of death." *Id.* at 123, 913 *A.*2d 791 (quoting *State v. Nolan,* 205 *N.J.Super.* 1, 4, 500 *A.*2d 1 (App.Div.1985)).

Dispoto did not hold as a matter of law that evidence seized under a domestic violence search warrant was not admissible in a subsequent criminal prosecution. Instead, its holding was limited to the following: an invalid domestic violence search warrant "may not be used as a bootstrap mechanism to obtain evidence to sustain issuance of a criminal search warrant." *Ibid.* Here, by contrast, the domestic violence search warrant was entirely proper.

Further, we noted in *Dispoto* that "permeating the series of events that transpired is the sense that the domestic violence search warrant was being used by law enforcement representatives to uncover evidence of criminal behavior unrelated to defendant's alleged acts of domestic violence." *Ibid.* The record before us contains no such implication.

C.

Having reviewed the general principles that govern this case, we turn to the core question presented in this appeal: whether the

weapons recovered during the domestic violence search of defendant's premises are admissible in defendant's subsequent trial on charges of possessing those weapons. The answer to this question depends, in part, on whether the illegal nature of the seized weapons was immediately apparent or whether a further search was required to determine that illegality. Analysis of this question requires separate consideration of the various items that were seized. We turn first to the Colt Anaconda revolver.

### D.

If the illegal nature of that revolver were immediately apparent, as if, for instance, the serial number had been defaced, no further search would be required to determine that the weapon was illegal. *N.J.S.A.* 2C:39–3(d); –9(e). We perceive no reason in logic or policy that would preclude prosecution of the holder of that weapon; no further invasion of a protectable privacy interest would occur as a result of that prosecution.

After oral argument, we requested supplemental briefing from the parties on whether the determination that the Anaconda revolver was a stolen weapon could be deemed a search for constitutional purposes. We have received and considered those briefs and are now satisfied that a check of the weapon's serial numbers is neither a seizure nor a search.

We reach this conclusion for several reasons. Federal statutes require that every manufacturer and importer of firearms identify each firearm "by a serial number which may not be readily removed, obliterated or altered." 26 *U.S.C.* § 5842(a). By state statute, every sale of a handgun shall be recorded by the retail dealer, with details with respect to the gun's manufacturer, make, model, and serial number. *N.J.S.A.* 2C:58–2(b). The dealer must promptly provide the details of that sale, including the weapon's serial number to the police, including the State Police superintendent. *N.J.S.A.* 2C:58–2(e); *N.J.A.C.* 13:54–3.14. Further, within thirty-six hours of any firearm being lost or stolen, the owner must report that fact to the police.

When a firearm is recovered in connection with a domestic violence incident, its serial number is entered into the National Crime Information Center (NCIC) Gun File. Access to this file is strictly limited and is obtained through New Jersey's Criminal Justice Information System, which is administered by the Criminal Justice Information System Control Unit of the New Jersey State Police. A search of this database can reveal whether that particular weapon has been reported lost, stolen, or used in a crime. It is that search of this database that revealed that the Colt Anaconda revolver seized from defendant had been reported stolen.

Any discussion of the constitutional implications of checking the serial numbers of a particular item must acknowledge *Arizona v. Hicks,* 480 *U.S.* 321, 107 *S.Ct.* 1149, 94 *L.Ed.*2d 347 (1987). In that case, the police responded to an apartment from which a bullet had been fired and wounded an occupant of the apartment below. 480 *U.S.* at 323, 107 *S.Ct.* at 1151–52, 94 *L.Ed.*2d at 353. In the course of looking for the shooter and the weapon that was used, the police seized three weapons, one of which was a sawed-off shotgun. 480 *U.S.* at 323, 107 *S.Ct.* at 1152, 94 *L.Ed.*2d at 353. One of the officers saw two sets of expensive stereo equipment in the apartment. *Ibid.* He considered that somewhat anomalous because the rest of the small apartment contained nothing of comparable value. *Ibid.* The officer moved the equipment pieces in order to view their serial numbers, which he recorded and reported by phone to headquarters. *Ibid.* He was advised that the pieces had been reported stolen, and he immediately seized them. 480 *U.S.* at 323–24, 107 *S.Ct.* at 1152, 94 *L.Ed.*2d at 353. Hicks was charged subsequently with robbery in connection with this equipment, and he filed a motion to suppress, which was granted by the Arizona courts. 480 *U.S.* at 324, 107 *S.Ct.* at 1152, 94 *L.Ed.*2d at 353. The United States Supreme Court granted the State's petition for certiorari, and it affirmed as well.

Writing for the Court, Justice Scalia noted that while "the mere recording of the serial numbers did not constitute a seizure[,]" the

moving of the stereo equipment constituted a search. *Ibid.* He continued that if the officer had "[m]erely inspect[ed] those parts of the turntable that came into view during the [original] search [it] would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interests." 480 *U.S.* at 325, 107 *S.Ct.* at 1152, 94 *L.Ed.*2d at 354. Because moving the stereo pieces was a search that was unrelated to the purposes of the original warrantless entry into the apartment though, it was "a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." *Ibid.*

Here, by contrast, the serial number of a firearm is visible simply by looking at the weapon; there is no need to disassemble any portion of it to learn its serial number. Recording that number, pursuant to *Hicks*, did not constitute a seizure.

 We must also consider whether the entry of that serial number into the NCIC system, and a review of the results, constitutes a search. We are satisfied it does not.

 We perceive no principled distinction between a review of the serial numbers entered into the NCIC database and a check of the license plate numbers of a motor vehicle. If a motorist has no reasonable expectation of privacy in the numbers displayed on his automobile, a conclusion this Court has already reached, *State v. Donis*, 157 *N.J.* 44, 723 *A.*2d 35 (1998), an individual possessing a firearm can have no reasonable expectation of privacy in the serial number displayed on his weapon. Indeed, this Court has recognized that "the NCIC database is comprised of matters of public record" and that, as a result, "an NCIC check is not a search under the federal or state constitutions." *State v. Sloane*, 193 *N.J.* 423, 436, 939 *A.*2d 796 (2008). There is no analytical basis that yields a different conclusion in this matter, which involved a review of the firearms database rather than a motor vehicle database. "The only fact that the officers could determine from the serial numbers was whether the guns were contraband. This fact ... cannot be the source of a privacy expectation 'that

our society is prepared to consider reasonable.' " *United States v. Kinney*, 953 *F*.2d 863, 866 (4th Cir.1992) (quoting *United States v. Jacobsen*, 466 *U.S.* 109, 122, 104 *S.Ct.* 1652, 1661, 80 *L.Ed.*2d 85, 100 (1984)).

It is also appropriate to consider the purpose that undergirds the exclusionary rule. Almost inevitably, whether as the result of mistake, inadvertence, ignorance, or overzealousness, police can come into possession of evidence bearing on criminal activity without having complied perfectly with the constitutional requirement of probable cause. In response to this reality, courts have crafted the exclusionary rule, under which evidence seized illegally is suppressed. *United States v. Calandra*, 414 *U.S.* 338, 347–48, 94 *S.Ct.* 613, 619–20, 38 *L.Ed.*2d 561, 571 (1974); *Handy, supra*, 206 *N.J.* at 45–46, 18 *A.*3d 179. The purpose of the rule is two-fold: 1) to assure that the law does not provide an incentive for police misconduct and 2) to protect judicial integrity. *Mapp v. Ohio*, 367 *U.S.* 643, 655–59, 81 *S.Ct.* 1684, 1692–94, 6 *L.Ed.*2d 1081, 1090–92 (1961); *Elkins v. United States*, 364 *U.S.* 206, 216–17, 80 *S.Ct.* 1437, 1444, 4 *L.Ed.*2d 1669, 1677 (1960). Here, there was no misconduct of any sort, no mistake in executing the warrant, and no disregard of its requirements. Consequently, to apply the exclusionary rule in this context would not further any of its purposes. We reach this conclusion in this limited, particular context, and we should not be understood at this juncture as retreating from our earlier rejection of the good faith exception. *State v. Novembrino*, 105 *N.J.* 95, 157–58, 519 *A.*2d 820 (1987).

We thus conclude that both the trial court and the Appellate Division erred when they held that the handguns seized from defendant should be suppressed.[2]

---

[2] The parties, the trial court, and the Appellate Division draw no distinction between the Colt Anaconda and the Ruger P89. We do not address whether there is any evidential basis to admit the Ruger P89.

E.

■ We turn finally to the seizure of the Cetme .308 caliber assault rifle and the large capacity magazines. We noted earlier that defendant's motion to suppress was decided by the trial court without the presentation of testimony. This led the Appellate Division to conclude that it was unable to determine whether the officers executing this domestic violence search warrant knew immediately that these items were illegal to possess, and it remanded the matter to the trial court for that factual determination. Out of an abundance of caution, we concur in this approach.

*N.J.S.A.* 2C:39–1(w) defines assault firearms. The record before us does not contain a description of the Cetme .308 rifle that was seized. It notes only that it contained one bullet in its chamber, which supports the charge of violating *N.J.S.A.* 2C:39–5(c)(2).

*N.J.S.A.* 2C:39–1 does not list specifically a Cetme .308 within its list of prohibited weapons, but it does refer to a CETME G3. The statute also includes as a prohibited weapon any firearm "substantially identical to any of the firearms listed above." *N.J.S.A.* 2C:39–1(w)(2). The record is silent whether the Cetme .308 seized from defendant is, in fact, a CETME G3 or whether it is immediately identifiable merely from visual inspection, as an automatic assault rifle.

*N.J.S.A.* 2C:39–1(y) defines a large capacity ammunition magazine as one "holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm." The indictment charges defendant with possessing five large capacity twenty-round magazines. But the record is silent as to whether the officers could recognize the illegality of these magazines simply by viewing them; for instance, were they packaged, and if so, did the packaging identify their illegal nature. The matter must be remanded to the trial court to answer these questions.

## VII.

In closing, we comment briefly upon the views expressed by our dissenting colleagues. This Court recently noted that "[t]he jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." *State v. Robinson*, 200 *N.J.* 1, 19, 974 *A.*2d 1057 (2009) (declining to address issue not raised before trial court). The dissent, in apparent disregard of this sound principle of appellate practice, goes even further and addresses an issue not raised by any of the parties at this point in this litigation. Defendant has been represented by capable counsel throughout these proceedings. The concerns properly raised by his counsel have been echoed by the amicus. Neither has seen any basis to challenge the constitutionality of *N.J.S.A.* 2C:25–28(j). It is therefore not surprising that the Attorney General's brief is entirely silent with respect to this issue. It is not appropriate in such a posture to enter this constitutional thicket.

## VIII.

So much of the judgment of the Appellate Division as affirmed the grant of defendant's motion to suppress is reversed; so much of that judgment as remanded the matter for further proceedings is affirmed.

Justice ALBIN, dissenting.

Protecting victims of domestic violence is a critically important societal concern. The Legislature has addressed that concern by passage of the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –35. However, the Domestic Violence Act, like all laws, must conform to the Constitution. The policy goals of the Domestic Violence Act can and must be achieved within the framework of the Constitution.

The Fourth Amendment protects against unreasonable searches and seizures and specifically provides that "no Warrants shall

issue, but upon probable cause." *U.S. Const.* amend. IV. Under our Fourth Amendment jurisprudence, the warrantless search of a home is presumptively unreasonable. *State v. Frankel,* 179 *N.J.* 586, 598, 847 *A.*2d 561, *cert. denied,* 543 *U.S.* 876, 125 *S.Ct.* 108, 160 *L.Ed.*2d 128 (2004). As written, the Domestic Violence Act permits the search of a home for weapons, even in the absence of exigent circumstances or some other well-recognized exception to the Constitution's warrant requirement, based on a warrant issued without a judicial finding of probable cause. *See N.J.S.A.* 2C:25– 28(j). Relying on the Act, the family court in this case issued a warrant for the search for weapons in defendant's home—without a finding of probable cause or a finding that would have excused non-compliance with the dictates of the Fourth Amendment. The United States Supreme Court has never suggested—even remotely—that the special-needs doctrine would justify a home search in circumstances such as presented here.

Defendant seeks suppression of the guns as evidence in his criminal trial. A review of the record and the jurisprudence underpinning the special-needs doctrine leads me to the conclusion that the search in this case violated the Fourth Amendment's probable-cause/warrant requirement, and therefore I would suppress the weapons seized from defendant's home in this criminal case.

I.

Our jurisprudence mandates that a court find probable cause that an act of domestic violence occurred before the issuance of a temporary restraining order (TRO). *State v. Dispoto,* 189 *N.J.* 108, 120, 913 *A.*2d 791 (2007); *State v. Cassidy,* 179 *N.J.* 150, 164, 843 *A.*2d 1132 (2004). However, the Domestic Violence Act does not require a judicial finding of probable cause for the issuance of a warrant authorizing the search of a home for weapons under *N.J.S.A.* 2C:25–28(j). The Act provides for the granting of emergency relief "when necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought," *N.J.S.A.*

2C:25–28(f), upon a showing of "good cause," *N.J.S.A.* 2C:25–28(i). Under subsection 28(j), "[e]mergency relief may include . . . ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located. . . ." *N.J.S.A.* 2C:25–28(j). Although the statute clearly states that there must be reasonable cause to believe that weapons are located in the place to be searched, there is no clear standard for the issuance of the search warrant itself. *See N.J.S.A.* 2C:25–28.

In *State v. Johnson*, 352 *N.J.Super.* 15, 39, 799 *A.*2d 608 (App.Div.2002), the Appellate Division imposed the less-stringent standard of reasonable cause to justify a home search for weapons under *N.J.S.A.* 2C:25–28(j). The *Johnson* court held that

> where there is *reasonable cause* to believe that, (1) an act of domestic violence has been committed by defendant, (2) the defendant possesses or has access to a firearm or other weapon enumerated in *N.J.S.A.* 2C:39–1r, and (3) defendant's *possession or access to that weapon poses a heightened or increased risk of danger to the victim,* then issuance of a search warrant as authorized by *N.J.S.A.* 2C:25–28j does not violate Fourth Amendment principles. . . .
>
> [*Ibid.* (emphasis added).]

*Johnson* did not cite any legal authority for setting a standard lower than probable cause for the issuance of a warrant to search a home for weapons. Significantly, in *Dispoto*, we specifically disapproved of the first prong of the *Johnson* standard, holding that "before a domestic violence temporary restraining order and *accompanying search warrant* can be issued, the court must find probable cause to believe that an offense of domestic violence has occurred." 189 *N.J.* at 120, 121 n. 3, 913 *A.*2d 791 (emphasis added). We have never *directly* addressed whether the remaining two prongs for the issuance of a search warrant in *Johnson* can be based on less than probable cause.

However, it is clear that the probable-cause warrant requirement for the search of a home applies whether a search is conducted pursuant to a criminal investigation or some civil or administrative regulatory scheme. *See Camara v. Mun. Court,* 387 *U.S.* 523, 530, 87 *S.Ct.* 1727, 1732, 18 *L.Ed.*2d 930, 936 (1967).

The text of the Fourth Amendment makes no distinction between criminal-investigatory or civil-regulatory searches of the home.

## II.

### A.

"[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court*, 407 *U.S.* 297, 313, 92 *S.Ct.* 2125, 2134, 32 *L.Ed.*2d 752, 764 (1972). For that reason, the home is "entitled to the highest degree of respect and protection within our constitutional framework." *Frankel, supra,* 179 *N.J.* at 612, 847 *A.*2d 561. Even when entry of a home is sought for the narrow purpose of checking for building-code violations, the United States Supreme Court has required warrants issued based upon probable cause. *Camara, supra,* 387 *U.S.* at 534, 538–39, 87 *S.Ct.* at 1733, 1735–36, 18 *L.Ed.*2d at 938, 941.

I can find no exception to the warrant requirement—including the doctrine of special needs—that permits the issuance of a warrant under *N.J.S.A.* 2C:25–28(j) for the search of a home on less than probable cause.

### B.

The majority accepts, as a given, that the search of the home in this case falls within the special-needs exception to the Fourth Amendment's probable-cause requirement. *Ante* at 581–83, 50 *A.*3d at 24–25. Yet the special-needs doctrine has never been used to suspend the probable-cause requirement necessary for the issuance of a warrant in circumstances comparable to this case.

The special-needs doctrine has been applied " 'in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *O'Connor v. Ortega,* 480 *U.S.* 709, 720, 107 *S.Ct.* 1492, 1499, 94 *L.Ed.*2d 714, 725 (1987) (quoting *New*

*Jersey v. T.L.O.,* 469 *U.S.* 325, 351, 105 *S.Ct.* 733, 748, 83 *L.Ed.*2d 720, 741 (1985) (Blackmun, J., concurring)). For example, balancing the intrusion on the individual's interest in privacy against the government's claim to special needs, the United States Supreme Court has affirmed certain but not all drug-testing programs. *Bd. of Educ. v. Earls,* 536 *U.S.* 822, 829, 838, 122 *S.Ct.* 2559, 2564, 2569, 153 *L.Ed.*2d 735, 743, 749 (2002); *Vernonia Sch. Dist. 47J v. Acton,* 515 *U.S.* 646, 652–53, 664–65, 115 *S.Ct.* 2386, 2390–91, 2396, 132 *L.Ed.*2d 564, 574, 581 (1995); *Nat'l Treasury Employees Union v. Von Raab,* 489 *U.S.* 656, 665–66, 679, 109 *S.Ct.* 1384, 1390–91, 1398, 103 *L.Ed.*2d 685, 702, 710–11 (1989); *Skinner v. Ry. Labor Executives' Ass'n,* 489 *U.S.* 602, 619, 633, 109 *S.Ct.* 1402, 1414, 1421–22, 103 *L.Ed.*2d 639, 661, 670 (1989). *But see Chandler v. Miller,* 520 *U.S.* 305, 313–14, 321–22, 117 *S.Ct.* 1295, 1301, 1305, 137 *L.Ed.*2d 513, 522–23, 528 (1997) (holding that state may not mandate suspicionless drug testing of all candidates for state office).

Under the special-needs doctrine, the Supreme Court has upheld a warrantless search of a student's property based on reasonable suspicion. *T.L.O., supra,* 469 *U.S.* at 341, 105 *S.Ct.* at 742, 83 *L.Ed.*2d at 734. The rationale for not requiring strict adherence to the probable-cause requirement for searches in a school setting is that "the privacy interests of schoolchildren" must be accommodated "with the substantial need of teachers and administrators ... to maintain order." *Ibid.; see also Safford Unified Sch. Dist. #1 v. Redding,* 557 *U.S.* 364, 370, 129 *S.Ct.* 2633, 2639, 174 *L.Ed.*2d 354, 361 (2009).

Under the special-needs doctrine, prison searches have passed muster because of the lesser expectation of privacy that inmates have in a prison setting and because of the heightened need for security. *Bell v. Wolfish,* 441 *U.S.* 520, 557, 558–59, 99 *S.Ct.* 1861, 1883, 1884–85, 60 *L.Ed.*2d 447, 480, 481–82 (1979).

Also, a warrantless search of an individual's work area by a government employer based on reasonable grounds for suspicion of work-related misconduct was deemed permissible by the spe-

cial-needs doctrine. *O'Connor, supra,* 480 *U.S.* at 725–26, 107 *S.Ct.* at 1502, 94 *L.Ed.*2d at 728. Importantly, even in that case, the Supreme Court made a point to emphasize that the privacy interests of government employees in the workplace "are far less than those found at home." *Id.* at 725, 107 *S.Ct.* at 1502, 94 *L.Ed.*2d at 728.

The United States Supreme Court has never invoked the special-needs doctrine to suspend the probable-cause/warrant requirement for the search of a home—where the privacy interests of the individual are at their highest—except in the case of a probationer. In *Griffin v. Wisconsin,* based on the special-needs doctrine, the Court upheld the warrantless search of a probationer's home "because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement." 483 *U.S.* 868, 873, 107 *S.Ct.* 3164, 3168, 97 *L.Ed.*2d 709, 717 (1987). Unlike an ordinary citizen, a probationer only enjoys a " 'conditional liberty properly dependent on observance of special [probation] restrictions.' " *Id.* at 874, 107 *S.Ct.* at 3169, 97 *L.Ed.*2d at 718 (quoting *Morrissey v. Brewer,* 408 *U.S.* 471, 480, 92 *S.Ct.* 2593, 2600, 33 *L.Ed.*2d 484, 494 (1972)). The search of a probationer's home is obviously not comparable to that of a person accused of a crime or a domestic violence offense.

In analyzing the constitutionality of *N.J.S.A.* 2C:25–28(j), on the one hand, we must consider the heightened privacy interests an individual possesses in his home, interests protected by the Fourth Amendment. On the other, we must consider the State's purported special need to seize weapons from the home of an alleged domestic abuser. The Fourth Amendment "protects the right of the people to be safe within the walls of their homes, free from governmental intrusion." *Frankel, supra,* 179 *N.J.* at 611, 847 *A.*2d 561. The Domestic Violence Act recognizes that "protect[ing] the life, health or well-being of a victim on whose behalf the relief is sought" is an important state and societal interest. *See N.J.S.A.* 2C:25–28(f). Simply because a search is conducted for some purpose other than normal criminal investigation pur-

poses does not exempt the search from complying with constitutional requirements. *See Chandler, supra,* 520 *U.S.* at 318, 117 *S.Ct.* at 1303, 137 *L.Ed.*2d at 526 (finding alleged special need—drug-free candidates for office—not "important enough to override the individual's acknowledged privacy interest"). The special need must "make the warrant and probable-cause requirement impracticable." *Vernonia Sch. Dist., supra,* 515 *U.S.* at 653, 115 *S.Ct.* at 2391, 132 *L.Ed.*2d at 574 (quoting Griffin, *supra,* 483 *U.S.* at 873, 107 *S.Ct.* at 3167, 97 *L.Ed.*2d at 717) (internal quotation marks omitted). I do not believe that the probable-cause requirement is impracticable in a statutory scheme protecting victims of domestic violence, and to use a lesser standard is to diminish the sanctity of the home contrary to our Fourth Amendment jurisprudence.

The protections afforded to alleged victims by the Domestic Violence Act will not likely be impaired by requiring a court to find probable cause before authorizing a search for weapons. *N.J.S.A.* 2C:25–28(j) already requires that a warrant be issued before a weapons search. As previously mentioned, a court already must find "probable cause to believe that an offense of domestic violence has occurred" as a precondition to issuing a domestic violence temporary restraining order and accompanying search warrant. *Dispoto, supra,* 189 *N.J.* at 120, 121 n. 3, 913 *A.*2d 791.

It bears mentioning that *N.J.S.A.* 2C:25–28(j) allows for the search of any potential weapon, not just firearms. Thus, a warrant issued under the statute might include a search for and seizure of all knives and cutlery in the home. A search for weapons may be extremely expansive and intrusive, permitting officers to search every drawer or box in a home that may reasonably contain a weapon.

In our case, the search was executed by police officers pursuant to *N.J.S.A.* 2C:25–28(j). In most special-needs scenarios, searches are conducted by individuals other than law enforcement. *See, e.g., Skinner, supra,* 489 *U.S.* at 633, 109 *S.Ct.* at 1422, 103 *L.Ed.*2d at 670 (permitting *federal railroad officials* to drug test

employees); *O'Connor, supra,* 480 *U.S.* at 728, 107 *S.Ct.* at 1503, 94 *L.Ed.*2d at 730 (permitting *state hospital officials* to search employee's desk and office); *Griffin, supra,* 483 *U.S.* at 880, 107 *S.Ct.* at 3172, 97 *L.Ed.*2d at 722 (allowing *probation officers* to search probationer's home without warrant and on only reasonable cause); *T.L.O., supra,* 469 *U.S.* at 341–42, 105 *S.Ct.* at 742–43, 83 *L.Ed.*2d at 734–35 (permitting *school officials* to search students' belongings without warrant and only on reasonable cause).

Accordingly, it appears to me that the heightened privacy interests at stake in the present case outweigh the State's interest in dispensing with the constitutionally rooted probable-cause requirement. *N.J.S.A.* 2C:25–28(j) cannot be justified by the special-needs exception to the warrant requirement, as the State argues and majority concludes. Nor do I discern any other recognized exception that would permit dispensing with the probable-cause/warrant requirement.

The protections of the Fourth Amendment do not disappear merely because the term "special needs" is invoked. The search of a home is no less invasive to the individual if the purpose animating the search is prompted by a criminal investigation or domestic-violence-protection scheme. Today, under the banner of special needs, the majority crosses over the permissible bounds of the Fourth Amendment to uphold the search in this case.

### III.

The constitutional deficiencies in New Jersey's Domestic Violence Act become even more apparent when compared to similar laws around the country. Our State is certainly not alone in providing for the seizure of weapons or firearms from alleged domestic abusers—such provisions are commonplace among state domestic-violence statutes. *See, e.g., Alaska Stat.* § 18.66.100(c)(7) (2012); *Ariz.Rev.Stat. Ann.* § 13–3602(g)(4) (2012); *Ind.Code* § 34–26–5–9(c)(4) (2012); *Md.Code Ann., Fam. Law* § 4–506(f) (West 2012); *N.Y. Fam. Ct. Act* § 842–a (McKinney 2012); *N.C. Gen.Stat.* § 50B–3.1 (2011). New Jersey, howev-

er, is different from other states because *N.J.S.A.* 2C:25–28(j) authorizes the issuance of a warrant to search a defendant's home without a showing of probable cause or an opportunity for the defendant to willingly surrender his weapons.

Only five states statutorily authorize the issuance of a search warrant for the seizure of firearms in conjunction with the issuance of a temporary or permanent restraining order. *See Cal.Penal Code* § 1524(a)(11) (West 2012); *Del.Code Ann.* tit. 10, § 1045(a)(11) (2012); *Haw.Rev.Stat.* § 134–7(f) (2012); *Me.Rev. Stat.* tit. 19–A, § 4006(2–A) (2012); *N.H.Rev.Stat. Ann.* §§ 173–B–4, 173–B–5 (2012). Of these states, four—California, Hawaii, Maine, and New Hampshire—first require that a defendant fail to comply with a firearm surrender mandate before a warrant may issue upon probable cause for the search of a home. *Cal.Penal Code* § 1524(a)(11); *Haw.Rev.Stat.* § 134–7(f); *Me.Rev.Stat.* tit. 19–A, § 4006(2–A); *N.H.Rev.Stat. Ann.* § 173–B–4. Delaware is the only state with a comparable approach to our Domestic Violence Act's weapons-search policy. However, even Delaware's scheme requires more of a showing than what is required under *N.J.S.A.* 2C:25–28(j). Delaware's statute expressly links the issuance of a search warrant to a showing that "[r]espondent has used or threatened to use a firearm against the petitioner, or the petitioner expresses a fear that the respondent may use a firearm against them." *Del.Code Ann.* tit. 10, § 1045(a)(11).

*N.J.S.A.* 2C:25–28(j), by contrast, does not require that the search for and seizure of weapons be linked to a defendant's gun use, threat of use, or potential for gun violence. *But see Johnson, supra,* 352 *N.J.Super.* at 39, 799 *A.2d* 608 (requiring reasonable cause that defendant's possession of or access to weapons poses heightened or increased risk of danger to victim). The stark contrast between New Jersey's approach and that of other states, which appear to adhere to the limitations imposed by the Fourth Amendment, lends support to the notion that our State's procedures are constitutionally deficient.

## IV.

### A.

As noted earlier, searches authorized under *N.J.S.A.* 2C:25–28(j) do not fall under any well-established exception to the probable-cause/warrant requirement. To conform *N.J.S.A.* 2C:25–28(j) with the dictates of the Fourth Amendment, a probable-cause requirement must be imported into the statute. Domestic violence is undoubtedly a major societal concern, but it must be addressed within the bounds of the Constitution.

Probable cause for the seizure of weapons in the domestic-violence context would be somewhat different than the probable-cause standard used for a typical criminal search warrant. *See Camara, supra,* 387 *U.S.* at 539, 87 *S.Ct.* at 1736, 18 *L.Ed.*2d at 941 (noting that in context of city inspections of private property "[i]f a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant"); *State v. Waltz,* 61 *N.J.* 83, 87, 293 *A.*2d 167 (1972) (holding that "a 'well grounded' suspicion that a crime has been or is being committed" is one way of expressing probable cause justifying search in criminal case). In my view, so long as the court makes a determination that there is (1) probable cause to believe that an act of domestic violence has been committed by the defendant, *Dispoto, supra,* 189 *N.J.* at 120, 913 *A.*2d 791; (2) probable cause to believe a search for and seizure of weapons is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought," *see N.J.S.A.* 2C:25–28(f); and (3) probable cause to believe that the weapons are located in the place to be searched, a warrant issued under this statute is constitutionally sound. These refinements would keep *N.J.S.A.* 2C:25–28(j) from running afoul of the Fourth Amendment.

When a search is conducted pursuant to a warrant issued in accordance with the probable-cause requirement of the Fourth Amendment, the officers executing the warrant may seize not only the weapons identified in the warrant but any other contraband

observed in plain view. The serial number on the face of the weapons seized in conformity with the Fourth Amendment may be checked; additional constitutional safeguards are not required because a registry check of the numbers does not constitute an impermissible search.

## B.

In this case, the court issued a search warrant for defendant's home without the requisite showing of probable cause. The trial court's error is understandable; at the time, neither the statute nor our case law required a probable-cause determination. While the underlying facts in this case may have been sufficient to support a finding of probable cause, no such finding was expressed. This Court may not make an after-the-fact probable-cause determination to substitute for the one not made by the trial court.

Last, defendant argues that the evidence seized from his home cannot be used in a criminal trial because the warrant was issued, on a standard less than probable cause, pursuant to the regulatory scheme of the Domestic Violence Act. Defendant does not squarely challenge the search of the home itself. I am mindful that the constitutionality of *N.J.S.A.* 2C:25–28(j) has not been directly raised by the parties. However, I do not believe the statute's apparent deficiencies should be ignored. *See R.* 2:10-2 (providing that "the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court"). If it is necessary to conform *N.J.S.A.* 2C:25–28(j) to the dictates of the Fourth Amendment, as my review has led me to believe, it is better to do so now rather than at some later time. I would prefer to give the parties a fair opportunity to address the constitutionality of the statute at a new oral argument with further briefing. *See Ford v. Reichert,* 23 *N.J.* 429, 435, 129 *A.2d* 439 (1957) (noting that "litigants are entitled to notice of the points the court thinks constitute plain error and have a right to be

heard before a final determination"). However, because there will not be re-argument, the issue will have to await future resolution.

It bears mentioning that this Court has not turned a blind eye when parties have missed an unavoidable constitutional issue present in a case. Just this term, in *State v. Edmonds*, 211 *N.J.* 117, 132 n. 6, 47 *A.*3d 737, 745 n. 6 (2012), after oral argument, this Court asked the parties to brief the question of whether our decision in *State v. Frankel*, 179 *N.J.* 586, 847 *A.*2d 561 (2004), was at direct odds with United States Supreme Court Fourth Amendment jurisprudence following *Frankel.* Earlier, the parties had accepted, as an article of faith, that *Frankel,* as written, set the guiding principles on which to decide Edmonds. After re-briefing, both parties agreed that the *Frankel* standard had to be amended to conform to more recent United States Supreme Court rulings. *Edmonds, supra,* 211 *N.J.* at 132, n. 6, 47 *A.*3d 737, 745 n. 6.

## V.

On the basis of the record before the Court and the law as I understand it, defendant's suppression motion is meritorious because the search was conducted without a finding of probable cause to support the warrant. I therefore would reverse the trial court and suppress the evidence as the product of an unconstitutional search.

I respectfully dissent.

*For reversal in part/affirmance in part/remandment*—Chief Justice RABNER and Justices HOENS, PATTERSON and Judge WEFING (temporarily assigned)—4.

*For Dissenting*—Justices LaVECCHIA and ALBIN—2.