SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. James Hemenway (A-19-18) (081206)**

**Argued March 26, 2019 -- July 24, 2019**

**ALBIN, J., writing for the Court.**

The Prevention of Domestic Violence Act (Domestic Violence Act or Act), N.J.S.A. 2C:25-17 to -35, empowers a judge to issue a temporary restraining order (TRO) to protect a victim of domestic violence and to enter an order authorizing the police to search for and seize from the defendant's home, or any other place, weapons that may pose a threat to the victim. In this appeal, the Court considers whether the reasonable cause standard for the issuance of a domestic violence search warrant for weapons set forth in N.J.S.A. 2C:25-28(j) and a 2002 case is incompatible with the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution.

In June 2012, D.S. filed a domestic violence complaint against defendant James Hemenway and requested a TRO barring him from having contact with her and members of her family, as well as from possessing "firearms, knives, & [a Taser]." D.S. appeared before a Family Part judge, who asked: "[D]o you have a[n] awareness that he has any weapons?" When D.S. said "yes," the court asked, "What kind of weapons do you claim he has?" D.S. replied, "Handguns, knives." The court: "A handgun?" D.S.: "Knives, blades." The court: "Handguns?" D.S.: "Switchblades." D.S. stated that Hemenway kept those weapons in his three cars and his apartment. The court entered a TRO and authorized the issuance of a warrant to "search for and seize . . . handguns, knives, switchblades" from Hemenway's home and three vehicles. The court did not articulate a reasonable cause or probable cause basis for believing that Hemenway possessed firearms or switchblades or that they would be found in the places to be searched.

On June 29, 2012, two Old Bridge police officers advised Hemenway outside his apartment that they possessed a TRO and a warrant to search his residence for weapons. The officers did not allow Hemenway to call his attorney, and Hemenway then refused their order to allow them entry to his apartment. Hemenway was arrested for obstructing the execution of the domestic violence warrant. Officers entered the apartment and observed what appeared to be marijuana and cocaine. Based on that discovery, a detective applied for and received a telephonic search warrant for the residence and the vehicles. The police searched and recovered drugs, bullets, and cash. No handguns or switchblades were found. Defendant was charged with four drug offenses.

1

The trial court denied Hemenway's motion to suppress, concluding that the telephonic criminal search warrant application set forth probable cause for the issuance of a warrant to search Hemenway's residence and that the domestic violence warrant provided an adequate and independent basis for the search of the vehicles. Hemenway appealed, challenging the validity of the domestic violence and telephonic search warrants. The Appellate Division affirmed the denial of Hemenway's motion to suppress. 454 N.J. Super. 303, 307 (App. Div. 2018). The Court granted Hemenway's petition for certification. 236 N.J. 42 (2018).

**HELD:** The beneficent goal of protecting domestic violence victims must be accomplished while abiding by well-established constitutional norms. Before issuing a warrant to search for weapons under the Act, a court must find that there is (1) probable cause to believe that an act of domestic violence has been committed by the defendant; (2) probable cause to believe that a search for and seizure of weapons is necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought; and (3) probable cause to believe that the weapons are located in the place to be searched. Transposed into the context of a domestic violence search warrant for weapons, probable cause requires that the issuing court only have a well-grounded suspicion.

1. The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in nearly identical language, both guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that "no Warrants shall issue, but upon probable cause." Whether a government official is armed with a criminal warrant or a civil or administrative warrant, physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. Because a warrantless search is presumptively invalid, the burden falls on the State to demonstrate that the search is justified by one of the few specifically established and well-delineated exceptions to the warrant requirement. One principal exception to the warrant requirement, as applied to the search of a home, is the exigent circumstances doctrine, which allows warrantless entry if police officers possess an objectively reasonable basis to believe that prompt action is needed to meet an imminent danger. Entry into the home must be premised on a search warrant issued on probable cause or on an exception to the warrant requirement, such as consent or exigent circumstances. (pp. 14-18)

2. The State claims that, under the special needs doctrine, a judicial order for the seizure of weapons under the Domestic Violence Act does not have to comport with the probable cause requirement. But neither the United States Supreme Court nor the Supreme Court of New Jersey has ever sanctioned the issuance of a warrant for the search of a home on less than probable cause under the special needs doctrine, except in the case of probationers. The special needs doctrine is applied in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable. (pp. 18-20)

2

3.  The Domestic Violence Act provides access to both civil and criminal remedies and sanctions.  One such remedy is to prevent a person judged to be a domestic violence abuser from having access to a weapon, including a firearm, which poses an imminent threat to a victim who has sought the protection of our courts.  See N.J.S.A. 2C:25-28(j).  The court is thus empowered to "order[] the search for and seizure of any firearm or other weapon at any location where the judge has <u>reasonable cause to believe</u> the weapon is located."  N.J.S.A. 2C:25-28(j) (emphasis added).  (pp. 20-22)

4.  The language of the Domestic Violence Act, standing alone, lacks clear standards to guide a court in ordering a civil warrant for the seizure of weapons.  Through judicial interpretation of the Act's provisions, New Jersey courts have imposed standards to conform the Act to the Federal and State Constitutions.  See <u>State v. Johnson</u>, 352 N.J. Super. 15, 20 (App. Div. 2002); <u>see also</u> <u>State v. Dispoto</u>, 189 N.J. 108, 120-21 (2007).  In <u>Johnson</u>, the Appellate Division set a reasonableness standard rather than the traditional probable cause standard for its three-part test.  352 N.J. Super. at 19-20.  In <u>Dispoto</u>, the Court disapproved of one part of the <u>Johnson</u> standard, holding that "before a domestic violence temporary restraining order and accompanying search warrant can be issued, the court must find <u>probable cause</u> to believe that an offense of domestic violence has occurred."  189 N.J. at 120, 121 n.3 (emphasis added).  The validity of the two other parts of the <u>Johnson</u> standard and the constitutionality of N.J.S.A. 2C:25-28(j) are now squarely before the Court.  (pp. 22-24)

5.  A search warrant for weapons under N.J.S.A. 2C:25-28(j) is a civil warrant aimed not at recovering evidence of a crime, but rather at seizing weapons that may pose an imminent risk to a domestic violence victim.  But the Fourth Amendment and Article I, Paragraph 7's prohibition against unreasonable searches and seizures and their command that warrants issue upon probable cause apply not only to criminal investigations but also to searches related to civil or administrative investigations.  (pp. 24-26)

6.  The important goals of the Domestic Violence Act can be achieved within our constitutional scheme of ordered liberty.  The sanctity of the home can be preserved while providing thorough safeguards to domestic violence victims.  The Court notes that other jurisdictions have conformed their domestic violence statutory schemes to the Fourth Amendment and that N.J.S.A. 2C:25-28(j)'s authorization of a search warrant issued on less than probable cause apparently is unique to New Jersey.  (pp. 26-29)

7.  The special needs doctrine has applied almost uniformly to those exceptional circumstances involving <u>warrantless</u> searches and seizures.  In this case, a domestic violence victim appeared before a court seeking a TRO and a warrant to seize weapons from an alleged abuser.  This is not an exceptional circumstance that renders the warrant and probable cause requirement impracticable.  (pp. 29-30)

8.  In <u>Johnson</u> and <u>Dispoto</u>, the courts engrafted standards onto the spare language of N.J.S.A. 2C:25-28(j) to save it from a constitutional challenge.  The standards that the Court adopts today will ensure that N.J.S.A. 2C:25-28(j) conforms to the Federal and State Constitutions, while safeguarding domestic violence victims.  Before issuing a search warrant for weapons as part of a TRO under the Domestic Violence Act, a court must find that there is (1) probable cause to believe that an act of domestic violence has been committed by the defendant; (2) probable cause to believe that a search for and seizure of weapons is necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought; and (3) probable cause to believe that the weapons are located in the place to be searched.  One long-established definition for probable cause for a criminal search warrant is a well-grounded suspicion.  As with any other search warrant, hearsay may be sufficient to establish probable cause, so long as there are facts which give the statement an appearance of trustworthiness.  Courts can credit information received directly from a citizen source.  Because domestic violence victims are often unrepresented, under considerable stress, in fear of their alleged abusers, and may have language barriers, courts must be patient and take the time necessary to make a complete record.  The court should ask the victim questions that will elicit the victim's basis of knowledge that the defendant possesses weapons and that the weapons will be found at a home or other location.  Additionally, the court may make reasonable inferences and accredit trustworthy hearsay when establishing a victim's basis of knowledge regarding the abuser's ownership and location of weapons.  (pp. 30-33)

9.  Applying those principles as well as the then-existing standards for issuing a domestic violence warrant, the Court finds that the search warrant issued here does not comport with the Fourth Amendment or Article I, Paragraph 7 of the State Constitution.  The family court issued the search warrant for weapons based on a deficient record and without making the necessary findings to justify the warrant's issuance.  Therefore, the search of Hemenway's home was unreasonable under the Federal and State Constitutions. All evidence derived from the search of his home, including the drugs and cash, must be suppressed based on the defective domestic violence warrant.  The fruits of the unlawful search of the home were used to form the factual basis for the issuance of the criminal search warrants.  Thus, the evidence secured from those searches must be suppressed as well.  The Court reaches that conclusion not only based on the Fourth Amendment, but also, separately, based on Article I, Paragraph 7 of the State Constitution.  Hemenway now has the option to withdraw his guilty plea in view of the order suppressing all evidence derived from the defective domestic violence warrant.  (pp. 33-36)

**The judgment of the Appellate Division is REVERSED and the matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

State of New Jersey,

Plaintiff-Respondent,

v.

James Hemenway a/k/a James A.
Hemenway and Jason Payne,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
454 N.J. Super. 303 (App. Div. 2018).

| Argued | Decided |
| --- | --- |
| March 26, 2019 | July 24, 2019 |

Edward C. Bertuccio argued the cause for appellant
(Kalavruzos, Mumola, Hartman & Lento, attorneys;
Edward C. Bertuccio and W. Les Hartman, of counsel
and on the brief, and Jessica A. Wilson, on the brief).

David M. Liston, Assistant Prosecutor, argued the cause
for respondent (Andrew C. Carey, Middlesex County
Prosecutor, attorney; David M. Liston, of counsel and on
the briefs).

Frank Muroski, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Gurbir S. Grewal, Attorney General, attorney; Frank
Muroski, of counsel and on the brief).

Ronald K. Chen argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (Rutgers

Constitutional Rights Clinic Center for Law and Justice and American Civil Liberties Union of New Jersey Foundation, attorneys; Jeanne LoCicero and Alexander Shalom, of counsel and on the brief, and Ronald K. Chen, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

No principle is more firmly rooted in our Federal and State Constitutions than the right of the people to be free from unreasonable searches of their homes. That constitutional commandment compels the police to secure a warrant based on probable cause before entering and searching a home, unless exigent circumstances justify suspending the warrant requirement. All statutes must conform to that fundamental constitutional principle.

The Prevention of Domestic Violence Act (Domestic Violence Act or Act), N.J.S.A. 2C:25-17 to -35, empowers a judge to issue a temporary restraining order (TRO) to protect a victim of domestic violence and to enter an order authorizing the police to search for and seize from the defendant's home, or any other place, weapons that may pose a threat to the victim. The issue here is that the Domestic Violence Act permits a judge to enter the order for the seizure of weapons from a home on less than probable cause. N.J.S.A. 2C:25-28(j).

In this case, based on the victim's written domestic violence complaint and testimony, the court issued a TRO against defendant James Hemenway and entered an order for the seizure of certain weapons, such as handguns, from his home and cars. The court, however, did not make the requisite probable cause finding mandated by our constitutional jurisprudence to justify the search. In executing the domestic violence search warrant, the police uncovered not guns but drugs, which led to Hemenway's arrest and prosecution for drug offenses.

Following the dictates of the Act, the trial court denied Hemenway's motion to suppress evidence related to the drug offenses found in his home and cars, and the Appellate Division affirmed.

Combatting domestic violence is an important societal and legislative goal. However, the Domestic Violence Act's standard for the issuance of an order for the search for weapons, particularly in a defendant's home, cannot be squared with the probable cause requirement of our State and Federal Constitutions. Accordingly, we now hold that the beneficent goal of protecting domestic violence victims must be accomplished while abiding by well-established constitutional norms.

The Act can be conformed to those constitutional norms and still fulfill its protective purpose. We therefore shall require that, before issuing a warrant to search for weapons under the Act, a court must find that there is

(1) probable cause to believe that an act of domestic violence has been committed by the defendant; (2) probable cause to believe that a search for and seizure of weapons is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought," see N.J.S.A. 2C:25-28(f); and (3) probable cause to believe that the weapons are located in the place to be searched. Transposed into the context of a domestic violence search warrant for weapons, probable cause requires that the issuing court only have a well-grounded suspicion.

In this case, we must reverse the denial of Hemenway's motion to suppress because the domestic violence warrant issued to search his home and cars was not based on the Constitution's probable cause requirement or even the lesser reasonable cause requirement. We therefore remand to the trial court for proceedings consistent with this opinion.

I.

A.

Hemenway was charged in a four-count indictment with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); first-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(1); fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3); and third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and

4

(b)(11).  The police discovered drugs while searching Hemenway's home for weapons pursuant to an order -- the equivalent of a warrant -- entered as part of a domestic violence TRO.  Based on that discovery, the police secured a criminal search warrant for Hemenway's home and cars and seized drugs and drug-related evidence from both places.

Hemenway moved to suppress the evidence seized from his home and cars, challenging both the validity of the domestic violence warrant to seize weapons and the later-issued criminal search warrant.  The trial court conducted a three-day suppression hearing.  Our review of the record is limited to the events surrounding the issuance of the domestic violence TRO and the related order to seize weapons from Hemenway's home and cars.

On June 28, 2012, D.S. filed a domestic violence complaint in the Union County Courthouse alleging that Hemenway committed the offenses of assault, terroristic threats, criminal mischief, criminal trespass, and harassment.  She claimed that they had a previous dating relationship.[1]  In the complaint, D.S. contended that on June 27, Hemenway entered her apartment unannounced through the living room window, damaging the air conditioner.  After directing a volley of "foul language" at her, Hemenway pushed D.S., causing her to fall.

---

[1] One way to establish jurisdiction under the Domestic Violence Act is to show that the parties had a dating relationship.  N.J.S.A. 2C:25-19(d).

5

When D.S.'s mother intervened, Hemenway punched and scratched the mother. D.S. further alleged that Hemenway attempted to strangle her, threatened to kill her and her family, threatened to have someone throw acid on her face, and shocked her with a Taser gun. At the end of this violent confrontation, Hemenway sat on a couch next to D.S., apologized, and said he loved her.

According to D.S.'s complaint, the next morning, on June 28, she and Hemenway met in a bank parking lot. There, she gave Hemenway money, and he threatened, "You will never see your mother. I will kill her!! I will destroy you & your family."

In the domestic violence complaint, D.S. requested a TRO barring Hemenway from having contact with her and members of her family and possessing "firearms, knives, & [a Taser]." D.S. appeared before a Family Part judge and recounted some of the events described in her complaint. Through a translator, D.S. had the following exchange with the court concerning weapons possessed by Hemenway:

> [THE COURT:] [D]o you have a[n] awareness that he has any weapons?
>
> [D.S.:] Yes.
>
> [THE COURT:] What kind of weapons do you claim he has?

6

[D.S.:]  Handguns, knives.

[THE COURT:]  A handgun?

[D.S.:]  Knives, blades.

[THE COURT:]  Handguns?

[D.S.:]  Switchblades.

[THE COURT:]  Knives?

[D.S.:]  Switchblades.

D.S. stated that Hemenway kept those weapons inside special compartments in his three cars and in his apartment.  The court did not follow up when D.S. was unresponsive to questions about whether Hemenway possessed handguns and did not ask how she knew that Hemenway possessed the weapons she described.

The court entered a TRO and authorized the issuance of a warrant to "search for and seize . . . handguns, knives, switchblades" from Hemenway's home and three specified vehicles.  Signing the TRO with its form language, the court

> found sufficient grounds and exigent circumstances that an immediate danger of domestic violence exists and that an emergency restraining Order is necessary pursuant to <u>R.</u> 5:7A(b) and N.J.S.A. 2C:25-28 to prevent the occurrence or recurrence of domestic

7

> violence and to search for and seize firearms and other weapons as indicated in this Order.[2]

The court did not articulate a probable cause basis for believing that Hemenway possessed firearms or switchblades or that they would be found in the places to be searched.

On June 29, 2012, two Old Bridge police officers advised Hemenway outside his apartment that they possessed a TRO and a warrant to search his residence for weapons. Purportedly for safety reasons, the officers did not allow Hemenway to call his attorney, and Hemenway then refused their order to allow them entry to his apartment. Hemenway was arrested for obstructing the execution of the domestic violence warrant authorizing the officers to search his residence. See N.J.S.A. 2C:29-9(b). One of the officers searched Hemenway incident to his arrest and secured keys to the apartment.

An Old Bridge police sergeant arrived at the scene and accompanied one of the officers already present into the apartment. They immediately detected a "distinctly strong odor of raw marijuana." During a protective sweep of the

---

[2] The family court conducted a later hearing to determine whether to enter a final restraining order. After taking testimony, the court concluded that D.S. had not established that she had a dating relationship with Hemenway. The court therefore declined to enter a final restraining order and dismissed the domestic violence complaint. That holding is not relevant to whether the family court had a valid basis to issue the domestic violence search warrant for weapons at the time of the entry of the TRO.

8

apartment, the officers observed what appeared to be marijuana in a jar in the living room and cocaine in a large freezer-style bag in the bathroom. A detective dispatched to the scene photographed the suspected drugs, as well as cash found in the bedroom. The police then impounded two of Hemenway's vehicles.

Based on the drugs discovered in the apartment, the detective applied for and received a telephonic criminal search warrant for the residence and the vehicles. The police searched and recovered forty-six items in all, including the marijuana and cocaine observed in the apartment, five hollow-point thirty-eight-caliber bullets in a safe in the living room, $20,000 in cash and a large bag of marijuana in one vehicle, and $72,000 in cash in another vehicle. No handguns or switchblades were found.

B.

The trial court concluded that the family court properly issued the TRO and related warrant to search for weapons. According to the trial court, the family court validly found that (1) D.S. and Hemenway were in a dating relationship, thus triggering the protections of the Domestic Violence Act; (2) there was probable cause that Hemenway committed acts of domestic violence against D.S.; (3) the issuance of the TRO was necessary to protect the life, health, or well-being of D.S.; and (4) there was a reasonable basis to

9

permit a search for weapons in Hemenway's residence and vehicles because D.S. testified that Hemenway possessed handguns and switchblades in those places, and because Hemenway could potentially use those weapons to cause further harm to D.S. The trial court also concluded that the domestic violence warrant to search for weapons was not used as a pretext to conduct a search for drugs.

The court further determined that although the telephonic criminal search warrant application set forth probable cause for the issuance of a warrant to search Hemenway's residence, it did not establish the requisite cause to search his vehicles. The court reasoned that the discovery of drugs in Hemenway's home did not -- without more -- give rise to probable cause to search his vehicles for evidence of a crime. Nevertheless, the court did not suppress the evidence found in the cars because the domestic violence warrant provided an adequate and independent basis for the search of those vehicles. Accordingly, the trial court denied Hemenway's motion to suppress evidence seized from both his home and his cars.

C.

Afterwards, in accordance with a plea agreement, Hemenway pled guilty to second-degree possession with intent to distribute cocaine, and the remaining charges against him were dismissed. Hemenway was sentenced to

10

an eight-year term of imprisonment subject to a four-year period of parole ineligibility and ordered to pay the requisite fines and penalties.

Hemenway appealed the denial of the motion to suppress, challenging the validity of the domestic violence and telephonic search warrants.

D.

The Appellate Division affirmed the denial of Hemenway's motion to suppress. State v. Hemenway, 454 N.J. Super. 303, 307 (App. Div. 2018). The court acknowledged Hemenway's argument that "N.J.S.A. 2C:25-28(j) is facially unconstitutional because it allows the Family Part to issue a search warrant based only on a finding of 'reasonable cause'" -- a standard lower than the Fourth Amendment's requirement that a warrant to search a home be supported by a showing of probable cause. Id. at 324. The Appellate Division recognized its right to address the constitutional issue raised but declined to do so and applied the existing jurisprudence in resolving the matter against Hemenway. Id. at 325. Although it upheld the issuance of the domestic violence warrant basically for the reasons expressed by the Law Division, the Appellate Division did note that the family court judge issuing the warrant failed to "state with specificity the reasons for and scope of any search and seizure authorized by the order." Id. at 323 (quoting N.J.S.A. 2C:25-28(j)).

E.

We granted Hemenway's petition for certification. 236 N.J. 42 (2018). We also granted the motions of the American Civil Liberties Union of New Jersey (ACLU) and the Attorney General of New Jersey to participate as amici curiae.

II.

A.

Hemenway asserts that the provision of the Domestic Violence Act authorizing the issuance of a warrant to search for weapons on less than probable cause violates the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. He argues that the probable cause requirement for a search warrant, particularly one that allows for the search of a home, cannot be circumvented by the special needs doctrine or even by a statutory scheme intended to protect victims of domestic violence. Because the domestic violence order to search for weapons in this case did not comport with that constitutional standard, Hemenway submits that the evidence seized from his home and cars must be suppressed.

Amicus curiae ACLU supports Hemenway's challenge to the constitutionality of N.J.S.A. 2C:25-28(j) of the Domestic Violence Act,

12

asserting that the warrant clause's probable cause requirement should be linked to the search for evidence of a completed crime and not to evidence of a person's propensity to commit some future crime. The ACLU contends that the special needs doctrine, which covers searches performed for reasons unrelated to law enforcement, does not apply here because searches under N.J.S.A. 2C:25-28(j) are conducted by law enforcement agencies. Finally, the ACLU raises the concern that searches for weapons authorized by N.J.S.A. 2C:25-28(j) apply not only to firearms, but also household items, including knives, razors, and garden tools. Such searches, the ACLU fears, are unrestricted in scope and allow for impermissible peering into almost any drawer, desk, or closet in a home.

## B.

The State asks this Court to uphold the constitutionality of N.J.S.A. 2C:25-28(j) and the searches in this case. It argues that the warrants issued for the search of weapons under N.J.S.A. 2C:25-28(j) satisfy the special needs doctrine exception to the probable cause requirement because protecting domestic violence victims from further harm is an important state interest unrelated to the investigation and prosecution of criminal activity. The State emphasizes that the purpose of the search warrant was to authorize the police to enter Hemenway's home to seize weapons that could be used to endanger a

13

domestic violence victim.  Alternatively, the State submits that the victim's complaint and testimony before the family court met the probable cause standard for the issuance of a weapons search warrant -- "probable cause to believe that a weapon would be found either in [Hemenway's] apartment or in one of his vehicles."

Echoing the State's arguments, the Attorney General maintains that a "civil weapons search to protect domestic-violence victims is a special-needs search" and therefore is not subject to the "probable-cause standard for criminal investigations."  The Attorney General notes that a civil warrant for a weapons search can issue only after the family court makes a probable cause finding that the defendant committed an act of domestic violence and that, cast in that light, the reasonable basis standard for a weapons seizure under N.J.S.A. 2C:25-28(j) passes constitutional muster.

### III.

Our standard of review in determining the constitutionality of a statute is de novo.  State v. Pomianek, 221 N.J. 66, 80 (2015).  We owe no deference to the interpretive conclusions of the Appellate Division in deciding an issue of law.  State v. Vargas, 213 N.J. 301, 327 (2013).  The question before us is whether the issuance of a search warrant for weapons on less than probable

14

cause pursuant to N.J.S.A. 2C:25-28(j) of the Domestic Violence Act comports with the dictates of our Federal and State Constitutions.

## A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in nearly identical language, both guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7.[3]  Although all warrantless searches are presumptively unreasonable, searches of the home are subject to even more careful scrutiny.  State v. Edmonds, 211 N.J. 117, 129 (2012).  "That is so because '[t]he sanctity of one's home is among our most cherished rights,'" and because "'[t]he very core of the Fourth Amendment and Article 1, Paragraph 7 protects the right of the people to be safe within the walls of their

---

[3]  Article I, Paragraph 7 of the New Jersey Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

15

homes, free from governmental intrusion.'" Ibid. (alterations in original) (quoting State v. Frankel, 179 N.J. 586, 611 (2004)).

The warrant and probable cause requirements of the Fourth Amendment and Article I, Paragraph 7 apply to both criminal-investigatory and civil- and administrative-regulatory searches of the home. See Camara v. Mun. Court, 387 U.S. 523, 534 (1967); see also DEP v. Huber, 213 N.J. 338, 358-59, 367-68 (2013). Whether a government official is armed with a criminal warrant or a civil or administrative warrant, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." See United States v. U.S. Dist. Court, 407 U.S. 297, 313 (1972).

Because a warrantless search is presumptively invalid, "the burden falls on the State to demonstrate that the search is justified by one of the 'few specifically established and well-delineated exceptions' to the warrant requirement." Frankel, 179 N.J. at 598 (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)). One principal exception to the warrant requirement, as applied to the search of a home, is the exigent circumstances doctrine. "[I]f police officers 'possess an objectively reasonable basis to believe' that prompt action is needed to meet an imminent danger, then neither the Fourth Amendment nor Article I, Paragraph 7 demand that the officers 'delay potential lifesaving measures while critical and precious time is expended

16

obtaining a warrant.'" Edmonds, 211 N.J. at 133 (quoting Frankel, 179 N.J. at 599). For example, we have long understood "that exigent circumstances may require public safety officials, such as the police, firefighters, or paramedics, to enter a dwelling without a warrant for the purpose of protecting or preserving life, or preventing serious injury." Id. at 130 (quoting Frankel, 179 N.J. at 598).

In addressing the community caretaking exception to the warrant requirement, we have emphasized the heightened privacy protections afforded to the home. See Vargas, 213 N.J. at 305, 321 (holding that "the community-caretaking doctrine is not a justification for the warrantless entry and search of a home in the absence of some form of an objectively reasonable emergency" or consent). In Edmonds, a case involving a report of domestic violence, we declared that the community caretaking doctrine is "not a roving commission to conduct a nonconsensual search of a home in the absence of exigent circumstances." 211 N.J. at 143 (emphasis added) (finding exigent circumstances to enter a home to assure the safety of a household based on a domestic violence complaint).

An overarching principle governs our constitutional jurisprudence: entry into the home must be premised on a search warrant issued on probable cause

17

or on an exception to the warrant requirement, such as consent or exigent circumstances. See id. at 129-30.

B.

The State claims that, under the special needs doctrine, a judicial order for the seizure of weapons under the Domestic Violence Act does not have to comport with the warrant clause's probable cause requirement. But neither the United States Supreme Court nor this Court has ever sanctioned the issuance of a warrant for the search of a home on less than probable cause under the special needs doctrine, except in the case of probationers. See Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) (noting that probationers are unique because "they do not enjoy 'the absolute liberty to which every citizen is entitled'" because their release from confinement is conditioned on continued supervision by the State (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972))).

The special needs doctrine is applied "in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." O'Connor v. Ortega, 480 U.S. 709, 720 (1987) (plurality opinion) (quoting New Jersey v. T.L.O., 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)). To determine whether, in an exceptional

18

circumstance, a special need justifies a search based on less than probable cause, the Court balances the need for a search against the nature of the intrusion. See T.L.O., 469 U.S. at 337. In those limited circumstances in which the special needs doctrine has been invoked, courts have upheld "searches and seizures based on reasonable grounds." See State v. Best, 201 N.J. 100, 108 (2010) (citing T.L.O., 469 U.S. at 340-41). In considering the justification for the special needs exception, an important part of the equation is "the degree to which a citizen has a legitimate expectation of privacy in the invaded place." See id. at 107-08 (quoting Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 590 (2003)).

The special needs doctrine has been applied in cases where the compelling justification for a search based on reasonable suspicion outweighed an individual's lessened expectation of privacy in a particular setting. Thus, in T.L.O., the United States Supreme Court concluded that the special needs doctrine applied in a school venue because "the substantial need of teachers and administrators" to exercise discretion in maintaining order and discipline in schools outweighed "the privacy interests of schoolchildren." 469 U.S. at 341. In that case, the Court upheld a school principal's search of a student's purse based upon reasonable suspicion. Id. at 345-48; see also

19

Joye, 176 N.J. at 595 (finding that the special needs doctrine justified the random suspicionless drug testing of students engaged in extracurricular activities or seeking special privileges).

Likewise, the special needs doctrine applies to prison searches given the lesser expectation of privacy that inmates have and the heightened security needs in the prison setting. See Bell v. Wolfish, 441 U.S. 520, 558-60 (1979). Similarly, the doctrine has been extended to certain public employer work-related searches given the "realities of the workplace, which strongly suggest that a warrant requirement would be unworkable." Ortega, 480 U.S. at 721; see also State in Interest of J.G., 151 N.J. 565, 578-88 (1997) (applying the special needs doctrine to the requirement that sex offenders must submit to testing for HIV or AIDS); N.J. Transit PBA Local 304 v. N.J. Transit Corp., 151 N.J. 531, 564-65 (1997) (finding that a special need justified a program of random drug and alcohol testing for employees in safety-sensitive positions).

We now turn to the provision of the Domestic Violence Act at issue.

## C.

The Legislature passed the Domestic Violence Act to combat the serious societal threat posed by violence in the home and in domestic relations, and to ensure that victims of domestic violence -- such as spouses, children, and parents -- received the "maximum protection" afforded by the law. N.J.S.A.

20

2C:25-18. In its findings and declaration, the Legislature emphasized the thousands of New Jersey residents "who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants." Ibid. The Legislature further expressed its intent "that the official response to domestic violence shall communicate the attitude that violent behavior will not be excused or tolerated." Ibid. The Act is intended to "protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions." Ibid.

One such remedy is to prevent a person judged to be a domestic violence abuser from having access to a weapon, including a firearm, which poses an imminent threat to a victim who has sought the protection of our courts. See N.J.S.A. 2C:25-28(j). A victim may file a complaint in the Family Part of the Superior Court alleging an act or acts of domestic violence and seek emergency, ex parte relief in the nature of a TRO. N.J.S.A. 2C:25-28(a), (f). The court "may enter an ex parte order when necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought," N.J.S.A. 2C:25-28(f), upon a showing of "good cause," N.J.S.A. 2C:25-28(i). The court is empowered to provide emergency relief that includes

> forbidding the defendant from returning to the scene of the domestic violence, forbidding the defendant from possessing any firearm or other weapon enumerated in subsection r. of N.J.S.A. 2C:39-1, ordering the search

21

for and seizure of any firearm or other weapon at any location where the judge has <u>reasonable cause to believe</u> the weapon is located and the seizure of any firearms purchaser identification card or permit to purchase a handgun issued to the defendant and any other appropriate relief.

[N.J.S.A. 2C:25-28(j) (emphasis added).]

The language of the Domestic Violence Act, standing alone, lacks clear standards to guide a court in ordering a civil warrant for the seizure of weapons. As written, the Act does not require a judicial finding of probable cause for the issuance of a search warrant authorizing the search of a home for weapons. See <u>ibid.</u> Instead, a judge issuing a TRO and related weapons search warrant need only find "reasonable cause to believe the weapon is located" in a particular place. <u>Ibid.</u> Through judicial interpretation of the Act's provisions, our courts have imposed standards to conform the Act to our Federal and State Constitutions. See <u>State v. Johnson</u>, 352 N.J. Super. 15, 20 (App. Div. 2002); <u>see also</u> <u>State v. Dispoto</u>, 189 N.J. 108, 120-21 (2007).

In <u>Johnson</u>, to conform the issuance of a domestic violence search warrant to constitutional principles prohibiting unreasonable searches and seizures, the Appellate Division set a reasonableness standard rather than the traditional probable cause standard on the basis that "a search warrant issued pursuant to <u>N.J.S.A.</u> 2C:25-28(j) is to protect the victim of domestic violence from further violence, and not to discover evidence of criminality." 352 N.J.

22

Super. at 19-20.  The Appellate Division concluded that before issuing a

domestic violence search warrant, a court

> must find there exists reasonable cause to believe that,
> (1) the defendant has committed an act of domestic
> violence, (2) the defendant possesses or has access to a
> firearm or other weapon delineated in N.J.S.A. 2C:39-
> 1(r), and (3) the defendant's possession or access to the
> weapon poses a heightened risk of injury to the victim.
>
> [Id. at 20.]

In Dispoto, we disapproved of the first prong of the Johnson standard,

holding that "before a domestic violence temporary restraining order and

accompanying search warrant can be issued, the court must find probable

cause to believe that an offense of domestic violence has occurred."  189 N.J.

at 120, 121 n.3 (emphasis added).  The validity of prongs two and three of the

Johnson standard were not at issue in Dispoto.  Nor was the validity of those

prongs raised by the parties in State v. Harris, a case in which the Court

declined to undertake a review of the constitutionality of N.J.S.A. 2C:25-28(j)

to address the concerns raised by two dissenting members of the Court.  211

N.J. 566, 592 (2012); see also id. at 592-603 (Albin, J., dissenting).[4]

---

[4]  Acknowledging that the parties had not challenged the constitutionality of
N.J.S.A. 2C:25-28(j), two members of the Court would have remanded and
given the "parties a fair opportunity to address the constitutionality of the
statute at a new oral argument with further briefing."  Harris, 211 N.J. at 602
(Albin, J., dissenting).

The issue not properly raised before the Court in <u>Harris</u> is now squarely before us:  whether the reasonable cause standard for the issuance of a domestic violence search warrant for weapons set forth in <u>Johnson</u> and N.J.S.A. 2C:25-28(j) is incompatible with the Fourth Amendment and Article I, Paragraph 7 of our State Constitution.

D.

We acknowledge that a search warrant for weapons authorized by N.J.S.A. 2C:25-28(j) is a civil warrant aimed not at recovering evidence of a crime, but rather at seizing weapons that may pose an imminent risk to a domestic violence victim.  We recognize the need for law enforcement to act expeditiously to protect domestic violence victims from harm.  <u>See</u> N.J.S.A. 2C:25-18.  But the Fourth Amendment and Article I, Paragraph 7's prohibition against unreasonable searches and seizures and their command that warrants issue upon probable cause apply not only to criminal investigations but also to searches related to civil or administrative investigations.  <u>See</u> <u>Camara</u>, 387 U.S. at 538-39.  The probable cause requirement for warrants is adaptable to civil and administrative search warrants to ensure that only reasonable searches are conducted under our Federal and State Constitutions, as the United States Supreme Court made clear in <u>Camara</u>.  <u>See</u> <u>ibid.</u>

24

The issue in Camara was whether a safety inspection ordinance authorizing "municipal officials to enter a private dwelling without a search warrant and without probable cause to believe" a housing code violation existed, and without consent, violated the Fourth Amendment. Id. at 527. In addressing that issue, the Court observed that it would be "anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." Id. at 530. It noted that "[i]n cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." Id. at 534. The Court recognized that the probable cause standard would have to be adaptable to an inspection-program scheme "aimed at securing city-wide compliance with minimum physical standards for private property." See id. at 535. That is so because "the facts that would justify an inference of 'probable cause' to make [a health and safety] inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken." Id. at 538.

In that light, the Court held that "[i]n determining whether a particular inspection is reasonable -- and thus in determining whether there is probable cause to issue a warrant for that inspection -- the need for the inspection must

25

be weighed in terms of these reasonable goals of code enforcement." Id. at 535 (emphasis added). Thus, "'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling," but nevertheless "reasonableness is still the ultimate standard." Id. at 538-39.[5]

Consistent with Camara, in Huber, we held that the State Department of Environmental Protection was required to secure a court order premised on probable cause authorizing a nonconsensual entry into a residential backyard to conduct an inspection. 213 N.J. at 367-68. We noted that probable cause in the administrative context is different from the criminal context and "may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied.'" Id. at 368 (ellipsis in original) (quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 320 (1978)).

IV.

A.

In applying the dictates of the Fourth Amendment and Article I, Paragraph 7 of our State Constitution to the Domestic Violence Act's

---

[5] Camara also clearly noted that inspections, even without a warrant, would be permissible if necessitated by "emergency situations." 387 U.S. at 539.

26

authorization to courts to issue warrants for the search of weapons in places that include the home, we must balance the traditional requirement that a warrant issue only upon probable cause and the need to provide domestic violence victims the maximum protection under the law. The important goals of the Domestic Violence Act can be achieved within our constitutional scheme of ordered liberty. The sanctity of the home can be preserved while providing thorough safeguards to domestic violence victims.

It bears mentioning that other jurisdictions have conformed their domestic violence statutory schemes to the Fourth Amendment. Although other states have statutes authorizing a court to order that an alleged domestic abuser surrender weapons under certain circumstances, those provisions do not permit the search of a home or other location on a showing of less than probable cause. See, e.g., Alaska Stat. § 18.66.100(c)(7); Ariz. Rev. Stat. Ann. § 13-3602(G)(4); Ind. Code § 34-26-5-9(d)(4); Md. Code Ann., Fam. Law § 4-506(f); N.Y. Fam. Ct. Act § 842-a(1)(a); N.C. Gen. Stat. § 50B-3.1(a).

Indeed, only five states statutorily permit the issuance of a search warrant for the seizure of firearms in conjunction with the issuance of a restraining order. See Cal. Penal Code § 1524(a)(11); Del. Code Ann. tit. 10, § 1045(a)(11); Haw. Rev. Stat. Ann. § 134-7(f); Me. Rev. Stat. Ann. tit. 19-A, § 4006(2-A); N.H. Rev. Stat. Ann. § 173-B:4. Of those states, four require

27

first that the defendant failed to comply with the firearm surrender mandate before a warrant may issue for the search of a home. See Cal. Penal Code § 1524(a)(11); Haw. Rev. Stat. Ann. § 134-7(f); Me. Stat. tit. 19-A, § 4006(2-A); N.H. Rev. Stat. Ann. § 173-B:4. Those states do not, however, permit the issuance of such search warrants on a showing of less than probable cause. See Frazzini v. Superior Court, 87 Cal. Rptr. 32, 37 (Ct. App. 1970) (requiring that search warrants issued pursuant to Cal. Penal Code § 1524 be based upon probable cause); State v. Kalai, 537 P.2d 8, 10 (Haw. 1975) (mandating under constitutional and statutory law that "no warrant may issue except upon probable cause"); Me. Stat. tit. 19-A, § 4006(2-A); N.H. Rev. Stat. Ann. § 173-B:4(II).

Delaware's domestic violence statute is closest to N.J.S.A. 2C:25-28(j), as it articulates its own standard for issuing search warrants for weapons in the domestic violence context. Although Delaware's statute does not explicitly require a finding of probable cause for the issuance of a search warrant for weapons, it provides greater protections against unconstitutional intrusions than those provided under N.J.S.A. 2C:25-28(j).[6] N.J.S.A. 2C:25-28(j)'s

---

[6] The Delaware statute explicitly permits the issuance of a warrant to search for and seize firearms if a domestic abuse victim can (1) "describe, with sufficient particularity, both the type and location of the firearm or firearms," and (2) prove that the alleged abuser "used or threatened to use a firearm against" the alleged victim, or that the victim "expresses a fear that the

28

authorization of a search warrant issued on less than probable cause apparently is unique to our State.

B.

We reject the State's argument that we should invoke the special needs doctrine to carve out a singular exception to the traditional constitutional protections afforded to the home under the warrant requirement by slackening the probable cause standard. Under our current jurisprudence, in a domestic violence setting, law enforcement officers can execute a warrantless entry of a home to seize weapons based on exigent circumstances. See Edmonds, 211 N.J. at 130.

The special needs doctrine has applied almost uniformly to those exceptional circumstances involving warrantless searches and seizures. See, e.g., State v. O'Hagen, 189 N.J. 140, 161-63 (2007); Joye, 176 N.J. at 596. In the case before us, we are dealing with a domestic violence victim who appeared before a court seeking a TRO and a warrant to seize weapons from an alleged abuser. This is not an exceptional circumstance that renders "the warrant and probable-cause requirement impracticable." See Ortega, 480 U.S.

---

[abuser] may use a firearm against them." Del. Code Ann. tit. 10, § 1045(a)(11).

at 720 (quoting T.L.O., 469 U.S. at 351 (Blackmun, J., concurring in the judgment)).

Applying the probable cause standard in a flexible and commonsense way -- guided by the standard of reasonableness that generally governs the legality of all searches and seizures -- we can maintain the heightened right of privacy attaching to the home while protecting domestic violence victims from imminent danger. See Camara, 387 U.S. at 534-35. We are mindful that the probable cause standard must be adapted to a legislative scheme that is civil in nature, as suggested in Camara. See ibid. In Johnson and Dispoto, our courts engrafted standards onto the spare language of N.J.S.A. 2C:25-28(j) to save it from a constitutional challenge. Johnson, 352 N.J. Super. at 19-20; Dispoto, 189 N.J. at 120. The standards that we adopt today are extensions of Johnson and Dispoto and will ensure that N.J.S.A. 2C:25-28(j) conforms to our Federal and State Constitutions, while safeguarding domestic violence victims.

Before issuing a search warrant for weapons as part of a TRO under the Domestic Violence Act, a court must find that there is (1) probable cause to believe that an act of domestic violence has been committed by the defendant, Dispoto, 189 N.J. at 120; (2) probable cause to believe that a search for and seizure of weapons is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought," see N.J.S.A. 2C:25-28(f); and

30

(3) probable cause to believe that the weapons are located in the place to be searched. See Harris, 211 N.J. at 601 (Albin, J., dissenting).[7]

One long-established definition for probable cause for a criminal search warrant "is a well-grounded suspicion." See State v. Smith, 212 N.J. 365, 388 (2012) (quoting State v. Moore, 181 N.J. 40, 45 (2004)). Transferred into the domestic violence context, the court issuing a weapons search warrant would merely have to find a well-grounded suspicion that the defendant committed an act of domestic violence, that a seizure of weapons is necessary to protect the life, health or well-being of the victim, and that the weapons are located in the place to be searched. See ibid. A showing of probable cause "is not a high bar." See State v. Pinkston, 233 N.J. 495, 509 (2018) (quoting District of Columbia v. Wesby, 583 U.S. ___, 138 S. Ct. 577, 586 (2018)).

To be clear, as with any other search warrant, hearsay may be sufficient to establish probable cause, "so long as there are facts which give the statement an appearance of trustworthiness." State v. Gathers, 234 N.J. 208, 221 (2018) (quoting State v. DiRienzo, 53 N.J. 360, 385 (1969)); see also State

_____

[7] If the court is presented with probable cause to believe that the alleged abuser possessed a weapon and possession of that weapon is per se a crime, see, e.g., N.J.S.A. 2C:39-5(a) (prohibiting unlicensed possession of machine guns); N.J.S.A. 2C:39-7 (prohibiting certain persons from possessing weapons), then a search warrant can issue, provided there is probable cause to believe that the weapons are located in the place to be searched. In such a circumstance, prongs one and two are inapplicable.

31

v. Novembrino, 105 N.J. 95, 123 (1987) (holding that whether an informant's tip gives rise to probable cause depends on the informant's "veracity and basis of knowledge" as part of the "totality of the facts" analysis).  Moreover, courts can credit information received directly from a citizen source.  State v. Basil, 202 N.J. 570, 586 (2010) ("Generally speaking, information imparted by a citizen directly to a police officer will receive greater weight than information received from an anonymous tipster. . . .  [W]e assume that an ordinary citizen 'is motivated by factors that are consistent with law enforcement goals.'") (quoting State v. Davis, 104 N.J. 490, 506 (1986)).

Because domestic violence victims are often unrepresented, under considerable stress, in fear of their alleged abusers, and may have language barriers, courts must be patient and take the time necessary to make a complete record.  In considering the issuance of a domestic violence search warrant for weapons, the court should ask the victim questions that will elicit the victim's basis of knowledge that the defendant possesses weapons and that the weapons will be found at a home or other location.  Additionally, the court may make reasonable inferences and accredit trustworthy hearsay when establishing a victim's basis of knowledge regarding the abuser's ownership and location of weapons.

Law enforcement successfully combats violent crimes and drug cartels, and investigates all manner of offenses, within the confines of the Fourth Amendment and our State Constitution. Prosecuting domestic violence abusers and protecting victims through the issuance of TROs and search warrants for weapons also can be achieved without weakening fundamental constitutional guarantees.

V.

Applying those enunciated principles discussed as well as the then-existing standards for issuing a domestic violence warrant for the search of weapons, we conclude that the search warrant issued here does not comport with the Fourth Amendment or Article I, Paragraph 7 of our State Constitution. Although the family court never made explicit probable cause findings that Hemenway had committed acts of domestic violence against D.S. as required by Dispoto, see 189 N.J. at 120, from the record before us, it is evident that the court credited D.S.'s testimony and therefore that prong is satisfied. We do not address whether the court found probable cause to believe a search for and seizure of weapons is necessary to protect the life, health or well-being of a victim or probable cause to believe that the weapons were located in the place to be searched, because even the lesser standard set forth in Johnson was not satisfied. Under Johnson, the court was required to find reasonable cause to

33

believe that "the defendant possesses or has access to a firearm or other weapon delineated in N.J.S.A. 2C:39-1(r)" and that his "possession or access to the weapon poses a heightened risk of injury to the victim."  See Johnson, 352 N.J. Super. at 20.

During its colloquy with D.S. at the hearing to issue a TRO and search warrant for weapons, the court did not elicit sufficient facts concerning whether Hemenway possessed a firearm and whether D.S. had knowledge regarding where Hemenway allegedly stored the weapons she identified.  Here is the colloquy conducted by the court:

> [THE COURT:]  What kind of weapons do you claim he has?
>
> [D.S.:]  Handguns, knives.
>
> [THE COURT:]  A handgun?
>
> [D.S.:]  Knives, blades.
>
> [THE COURT:]  Handguns?
>
> [D.S.:]  Switchblades.
>
> [THE COURT:]  Knives?
>
> [D.S.:]  Switchblades.

When a witness is non-responsive to the court's inquiry, the court should ask follow-up questions before issuing a search warrant for a handgun.  After D.S.'s last two responses, "Switchblades," the court asked, "Where does he

34

have these?"  She replied, "Special compartments in his car and at his apartment."  The court, however, made no inquiry concerning the basis of D.S.'s knowledge that Hemenway stashed switchblades or even a handgun in special compartments in cars he owned or at his residence.  The court made no findings -- based on either probable cause or reasonable cause -- that weapons would be found in those places.

The court should have elicited answers to determine whether D.S. knew Hemenway possessed a handgun and, if so, her knowledge concerning the location of the weapon.  We urge our judges to take the additional time to make an appropriate record before issuing a warrant for the search of a home for weapons.

We conclude that the family court issued the search warrant for weapons based on a deficient record and without making the necessary findings to justify the warrant's issuance.  Therefore, the search of Hemenway's home was unreasonable under our Federal and State Constitutions.  All evidence derived from the search of Hemenway's home, including the drugs and cash recovered there, must be suppressed based on the defective domestic violence warrant.  The fruits of the unlawful search of the home were used to form the factual basis for the issuance of the criminal search warrants.  Thus, the evidence secured from those searches must be suppressed as well.  State v.

35

Holland, 176 N.J. 344, 353 (2003) ("During an illegal search, . . . the police might acquire information that leads to other evidence . . . [which] might be suppressed or excluded as 'fruit of the poisonous tree.'").

## VI.

For the reasons expressed, we reverse the judgment of the Appellate Division upholding the denial of Hemenway's motion to suppress. We reach that conclusion not only based on the Fourth Amendment, but also, separately, based on Article I, Paragraph 7 of our State Constitution. Hemenway now has the option to withdraw his guilty plea in view of the order suppressing all evidence derived from the defective domestic violence warrant. We remand for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.